[Civ. No. 14445.   First Dist., Div. One.   Nov. 17, 1950.]

E. J. RICHEY, Appellant, v. CHARLES J. PEDERSEN
et al., Respondents.

I. Karmel for Appellant.

Carl William Anderson for Respondents.

BRAY, J.—In an action for attorney's services and for a declaration of rights in real property, the court, sitting without a jury, rendered judgment for defendants. Plaintiff appealed. The principal question raised is the sufficiency of the evidence to support the judgment.

### UNDISPUTED FACTS

In 1938, defendant Charles J. Pedersen* obtained a judgment against one Martha K. Roberts. The attorney who obtained the judgment had been unsuccessful in realizing on it. In the latter part of 1940, Joseph B. Bates, an attorney at law (plaintiff's assignor) undertook to investigate the possibility of collecting the judgment. Thereafter he had execution issued and levied upon certain real property of Mrs. Roberts in Burlingame. The property was sold at sheriff's sale. Bates bid in the property for defendant, for a credit on the judgment of $500, which amount, Bates testified, was about the equity there was in the property at the time. The property was subject to a first deed of trust to the Hibernia Bank for approximately $9,000. There were other liens and encumbrances against the property and Bates by negotiation and payment for defendant of nominal sums secured their release, and cleared the title in defendant, with the exception of the first deed of trust and certain tax liens. Defendant paid $878.23 to the bank to bring the deed of trust up to date. Bates negotiated a lease between defendants and Mrs. Roberts under which the latter released her equity of redemption and agreed to pay a monthly rental of $100. She was given an option to buy the property back for $11,750, which sum was approximately the amount of the judgment, the outstanding deed of trust, interest, taxes, and moneys paid by defendant; in other words, the amount necessary to bring defendant out whole on the transaction. (Defendant testified that the property, at this time, was worth only about $9,000. Bates testified that a Mr. Rochex had appraised it at $11,500. At the time

*As most of the discussions were with Charles J. Pedersen and Alida Pedersen was joined primarily because of her community interest in the judgment and the real property, Charles J. Pedersen will be referred to as defendant, unless otherwise noted.

of the trial the property was worth at least $25,000.) After four or five months Mrs. Roberts ceased paying rent and moved out taking her furniture with her, as well as some of the fixtures. Bates obtained the return of some of these. An effort was made, through newspaper ads placed by Bates, and otherwise, to sell the property, a price of $13,250 gross being placed on it. The property was vacant for about four months and then it was rented by a Mrs. Frazee. It became necessary for Bates to file a suit in the justice's court to get her out. The place was old and in need of repair. Defendants then occupied the premises and remodeled them.

### THE COMPENSATION AGREEMENT

The fact of the services by Bates is not disputed. The controversy is over payment therefor. Bates testified that he was to receive one-half of the amount realized from collecting the judgment. Defendant denied that there was any such agreement. At the time Bates undertook the employment, about January 10, 1941, defendant paid him $75 ''to cover the costs.'' On March 27 when defendant gave Bates $878 to pay up the Roberts' arrears at the bank, he also paid Bates $150 on account of attorney's fees. Defendant stated that Bates asked him for money all the time. About April 1 Bates presented defendant with a statement (defendants' exhibit A) reading: ''Fee: Recovery for client based on an appraisal value of property acquired of $11,500.00 made by Mr. Albert Rochex, would be the difference between the encumbrance of $8,500.00 and that appraisal figure, or a net sum of $3000.00. The judgment plus interest was $2700.00 however the fee will be determined on a 50 percent contingent basis of $2000.00 only or $1000.00. Fee......$1000.00 Received on account $110.00_____$990.00'' Defendant told Bates that he could not pay the whole amount. Bates then divided the $990 ''in 3 figures at so much a month.'' Bates wrote on the statement ''5-1-41 $330.00: 8-1-41 $330.00: 11-1-41 $330.00.'' Defendant paid him $275 on account. Defendant testified that Bates never answered a suggestion that he had made that Bates take the case on a contingency basis for 50 per cent of the recovery, but that on April 1, when the above statement was presented to defendant, Bates agreed to take the $1,000 as his fee. Other services, including the collection of rents, were rendered by Bates thereafter until August 1, 1942, for which no bill was ever presented.

In February, 1942 (which was approximately ten months

after the presentation of the $1,000 bill), Bates presented to defendants a form of agreement which set forth, in substance, that the parties had agreed that Bates' compensation for his services was one-half of the net recovery, that the real property was obtained for defendants by him, that since its acquisition Bates had rendered services of the reasonable value of $150 (evidently referring to the services rendered since the presentation of the $1,000 bill), that defendants had expended certain moneys on the property, that defendants would forthwith deed to Bates a one-half interest in the property, that from the rents defendants should reimburse themselves for the moneys expended by them less the rents already received. Defendant testified that in presenting this form of agreement, Bates said, ''if you don't like this agreement I will change it to suit you.'' This statement was not contradicted. Defendants refused to sign the agreement. Defendants, after moving into the premises, had made extensive repairs. On September 22, Bates wrote defendant claiming an interest in the property and stating that he would not be responsible for repairs. Thereupon (September 25) defendant wrote Bates as follows: ''Dear Mr. Bates: Received your letter of September 22nd, 1942. I was greatly surprised to know that you considered yourself to have any interest as to ownership of my property at 333 Occidental Avenue, Burlingame. To my knowledge you were engaged as my lawyer only to settle certain legal aspects of the case.

''The following lists your charges and my credits as my records show to date:  Fee  $1000

Court Costs  115

$1115

| Payment | 1-10-41 | $75.00 | 3-27-41 | $150 | 4-24-41 |
| $275.00 | total | $500.00 | Balance | $615.00 | |

According to my files *this is the balance owing*. If there was any further expense I have received no other statement.

''Am enclosing a check for $615.00 ($615.00) *to clear my account with you*.'' (Emphasis added.)

Accompanying the letter was a check for $615. Bates sent defendant a ''sassy'' letter, and after keeping the check for approximately two months, cashed it. No further demand was made upon defendants, except the filing of this suit September 28, 1944, summons in which was not served until approximately four years after the check was cashed.

## COMPLAINT AND FINDINGS

In the amended complaint there are three counts: (1) Common count for $6,500 as the reasonable value of the services rendered. (2) An agreement for compensation of one-half of any net sums or property collected or secured by Bates for defendants, and asking the court for declaratory relief decreeing plaintiff's interest in the property. (3) Common count for $6,500 for services rendered at defendants' special instance and request. The court found that there was no agreement to pay Bates one-half of all sums or property acquired, but that while defendant employed Bates to ascertain if the Roberts judgment was collectible, no compensation was agreed upon until the rendition of the $1,000 bill to defendant, that defendant made certain payments thereon, and in September, 1942, paid up the balance by check, informing Bates that the check was payment in full for services rendered and that Bates cashed the check knowing that it was given as full payment; that Bates rendered no bill for services performed after rendering the statement; that the last additional service was performed on August 1, 1942, and that such services were barred by the statute of limitations; that plaintiff had no interest of any kind in the property.

So far as the third cause of action, that for the reasonable value of the services rendered, is concerned, the court found that $1,000 was such value. The testimony of an attorney called by defendant is substantial evidence to support such finding.

## SUFFICIENCY OF EVIDENCE

■ While there is evidence that would have supported Bates' contention that he was employed on a 50/50 basis, there is likewise substantial evidence which supports the court's finding to the effect that the first time the parties agreed upon compensation was when Bates presented the $1,000 bill and defendant made a payment on account thereof, and Bates in pencil noted figures thereon confirming defendant's statement that it was agreed that he could pay the balance in three equal monthly payments. While defendant did not pay it in that way, he believed, when he sent his check for the balance of $615, that this amount was the balance he owed, and that the check would "clear my account with you." This letter and check are highly important in determining what was the understanding of the parties. Plaintiff contends that from the very beginning of the employment they had agreed upon the compensation. Defendant contends the first time they

agreed was when he was presented with the $1,000 statement, and that while he stated he could not pay it in full at that time, he did pay $275 on account of it. Plaintiff contends that defendant refused to agree to this sum. Plaintiff nowhere denies the fact that the $275 was paid on account of the statement. Then comes the situation when Bates presented defendant with an agreement in which defendants were to deed Bates a one-half interest in the property, Bates stating that he would change the agreement to suit defendant. Finally, when defendant received a letter from Bates claiming an interest in the property, defendant wrote the letter stating that he was surprised to know that Bates claimed any interest in it, listed "your charges and my credits" and stated that $615 is the "balance owing," enclosed check to "clear my account with you." Bates cashed the check! The cashing of the check under such circumstances fully supports the court's finding that for services rendered to the date of the statement, April 1, 1941, the parties first and only agreed that Bates' compensation should be $1,000.

In addition to the rendition of the statement, there are certain acts of Bates in evidence which are, to some extent at least, inconsistent with an agreement giving him a one-half interest in the property. He was indifferent to pressing collection of unpaid rents due from Mrs. Roberts, in spite of the fact that under his theory, he would be entitled to one-half of them, or, at least, to have them paid on the indebtedness against the property. He advised Mrs. Roberts concerning water rights on her Santa Cruz property and yet did not cause the unsatisfied execution to be levied on that property. Defendant testified that when he was considering remodeling the house into apartments Bates asked him how much defendant would give Bates if he succeeded in having the property classified as apartment house property. Bates asked for, and received, fees from defendant on three separate occasions. He prepared a quitclaim deed from Mrs. Roberts to defendant and a lease from defendant to Mrs. Roberts. Under his theory he would have been entitled to have been a party in both instruments. He accepted no responsibility either for the payments which had to be paid monthly on the bank deed of trust, or for any of the considerable amount of expense defendant incurred in improving the property. While, possibly, no one circumstance is completely controlling, added together they definitely and substantially support the court's findings.

In plaintiff's opening brief (p. 5) it is stated that "the attorney rendered to the clients a statement in which he offered to accept as his compensation and *for his interest in the premises* . . . $1,000.00." (Emphasis added.) Assuming that at this time Bates did have an interest in the property, the acceptance by defendant of the offer and his paying $275 on account thereof, constituted an acceptance of the transaction, even though before the amount was paid in full, Bates attempted to repudiate it by claiming that he still owned an interest in the property. While in the brief the above excerpt is followed by a claim that defendants declined this offer, the facts show otherwise, and the court so found.

### Alleged Judicial Admissions

Plaintiff contends that certain statements made by defendant at the trial were judicial admissions of facts favorable to plaintiff and were conclusive against defendants. However, these statements do not have the effect claimed. The first one was: "Q. Had he ever explained to you about having a half interest in this property before December 22nd? [This date should be September 22nd, the date of Bates' letter claiming an interest in the property.] A. I think some time before, when I was trying to sell the house we should divide all the profit after all the mortgage was paid, that was my understanding. Q. At the time you employed Mr. Bates as your attorney and you agreed he should take this case on a contingency basis and you would give him one half of any of the money that was recovered? A. When I suggested anything he never answered."

On another occasion, on cross-examination, defendant stated that he told Bates that if Bates sold the property he would divide 50/50 with him after payment of the mortgages. Later, on cross-examination, defendant, referring to a time prior to his moving on to the property, stated that he wanted to sell so he could pay Bates by dividing the proceeds of the sale on a 50/50 basis if Bates could pay off the mortgage and other expenses.

Having in mind that defendant claimed throughout that he had never agreed to any understanding other than the $1000 indebtedness, it is apparent that at most these instances constitute a conflict or inconsistency in defendant's testimony which it was the duty of the court to resolve. (See *Peterson v. Peterson,* 74 Cal.App.2d 312 [168 P.2d 474].)

At the time defendant and Bates were trying to sell the property there was very little, if any, equity in it. In fact,

the reason that it could not be sold was that apparently it was not worth the amount being asked. Hence, defendant's claim that Bates never agreed to such an arrangement is consistent with the statements above mentioned. In any event, if there was a 50/50 agreement it was changed by the offer in the $1,000 statement which defendant accepted. Moreover, in view of defendant's repeated negation of any contract as claimed by Bates, and the fact that in two of the instances above mentioned the statements were answers to leading questions of the cross-examiner putting his own construction on the understanding, such answers do not measure up to the requirement that to be judicial admissions they must be clear and unequivocal. As stated in *Frost* v. *Los Angeles Ry. Co.*, 165 Cal. 365, 371 [132 P. 442], "A party who testifies in his own behalf does not do so at the peril of having every slip of his tongue taken as conclusively true, if his inadvertently used words cause him to appear to have made a statement which is not true, but is against his own interest in the case. It is the province of the jury to observe the witness, note his manner of speech, and consider his testimony as a whole in connection with the other evidence, and it is for it to determine therefrom whether he stated the facts as he intended and understood them to be, or whether he unintentionally used words not expressing his real meaning in any particular utterances he may have made." "A rule which binds a party to a particular statement uttered on the stand becomes an artificial rule. It is out of place in dealing with testimony. Let the judge test each case by itself." (Wigmore on Evidence, 3d ed., vol. IX, p. 601, § 2595.)

Plaintiff cites *Pearson* v. *Hendrick*, 13 Cal.App. 732 [110 P. 586], for the proposition that presenting the statement for a certain amount does not prevent proving subsequently the fair value of the services. Just how pertinent this rule is here does not appear, as the court found, on substantial evidence, that the reasonable value of the services was only $1,000.

### ACCOUNT STATED

The court found that there was no express agreement between the parties until the rendering of the April statement. It found that in January, 1941, defendant employed Bates. Of course, upon such employment, there arose an implied agreement to pay the reasonable value of his services (which, as pointed out before, the court found to be the $1,000 defendant paid for them). ■ When Bates rendered a state-

ment setting forth what he considered the reasonable value of those services, and defendant accepted the statement and paid the $275 on account thereof, asking time for the payment of the balance, there immediately was an account stated. ■ To constitute an account stated it is not required that the whole of the amount agreed be paid at once. (See 1 C.J.S. p. 463, § 1.) A debtor may show his assent to an account rendered by making a part payment on it (see 1 C.J.S. p. 712, § 32(a)(2).) When defendant, under the circumstances here, tendered his check in payment of the balance of the account and plaintiff accepted it, the account was then completely stated, if for any reason it was not stated before.

■ It is true, as indicated in *Potter* v. *Pacific Coast Lumber Co.* (Cal.App.2d), 222 P.2d 54, cited by plaintiff, that the mere fact that the creditor cashes a check given by the debtor in full settlement of a claim, does not always constitute an acceptance by the creditor of the condition attached. Whether it does or not depends upon all the circumstances connected with the transaction. "The language of *Owens* v. *Noble,* 77 Cal.App.2d 209, 215 [175 P.2d 241], quoting from *Biaggi* v. *Sawyer,* 75 Cal.App.2d 105, 114 [170 P.2d 678], is here pertinent: ' "Whether there was a dispute concerning the amount due and whether the tender was on condition that acceptance would be in full satisfaction, are primarily questions of fact for the trial court." . . .' "

Plaintiff's contention that there was no account stated is based primarily on his claim that defendant refused to assent to the account. Not only is there defendant's testimony that he did assent, but the other evidence which raises a reasonable inference that he did.

In view of our determination that the court correctly found the agreement between the parties, it becomes unnecessary for us to consider defendants' claim of accord and satisfaction.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.