739 P.2d 400

**MODERN MILLS, INC.,**
**Plaintiff-Respondent,**

v.

**W.W. HAVENS and Alice Havens, husband and wife, Defendants-Appellants.**

**No. 16419.**

Court of Appeals of Idaho.

May 19, 1987.

Robert M. Kerr, Jr., Blackfoot, for defendants-appellants.

Dean Williams, Blackfoot, for plaintiff-respondent.

WALTERS, Chief Judge.

Modern Mills, Inc., sought payment on W.W. Havens' promissory note and on his merchandise account with the mill.[1] Havens counterclaimed to obtain an accounting and profits from certain joint ventures with Modern Mills. Following trial without a jury, the court entered a judgment in favor of Modern Mills for $22,901.76 plus costs and attorney fees. The court denied Havens any relief on his counterclaim.

On appeal, Havens raises a variety of issues. We have organized these issues according to the particular account in question. First, does the record support the trial court's conclusion that, for purposes of the statute of limitation, a payment of interest on the promissory note revived Havens' promise? Second, with regard to the merchandise account: (a) Did the trial court err by concluding that the opening balance of this account was an account stated? (b) Was each particular charge in the merchandise account supported by substantial and competent evidence? (c) Was recovery on this account barred by the statute of limitation? (d) Did the trial court erroneously permit interest on the account under a "law of merchants" theory? Third, was Modern Mills relieved of any duty to provide an accounting in the joint ventures? And finally, did the court err by denying Havens' motion for a new trial? We hold that the trial court should have ordered an accounting by Modern Mills on the joint ventures. In other respects, the judgment of the trial court is

affirmed, but we direct the court to review the judgment calculation. In sum, we affirm the judgment in part, vacate it in part, and remand the case for further proceedings.

We derive the following background from the record. In addition to milling grain, Modern Mills was in the business of supplying feed, seed, and other supplies, and of buying and selling grain and livestock. During the early 1970's, Havens, a farmer, had an account with Modern Mills for charging various purchases. In December, 1974, Havens' account balance of $5,054.76 was converted into a promissory note, due in 300 days and bearing interest at ten percent per annum. Shortly thereafter, in early 1975, Havens opened a new account with the mill. Havens continued to obtain supplies from Modern Mills and to sell grain to the mill. This account remained open until ownership of the mill was transferred in 1981.

During this period, Modern Mills and Havens also agreed to pursue three separate projects where Havens would raise pigs supplied by Modern Mills. By agreement, the mill provided feed and other supplies. Havens supplied the facilities and labor. Apparently Modern Mills was to bear any losses, while any profits were to be shared by Modern Mills and Havens. No profits were received by Havens. The documentation of all of the transactions between these parties is sparse and often disputed as to accuracy.

After selling the business, Modern Mills' former owners sought to collect on their accounts receivable. Their corporation filed a complaint against Havens in March, 1984. In this action, the mill sought recovery on the promissory note and to collect the final balance of Havens' merchandise account. However, Modern Mills was unable to provide evidence of any specific account items prior to August 12, 1975, when its ledgers indicated a balance of $2,294.77.

1. Although Alice Havens was named as a defendant in this action, the trial court found that she bore no personal or separate obligation.

Therefore, we address the case as if W.W. Havens were the sole defendant.

The trial judge granted Modern Mills' claim on the promissory note, including unpaid interest at the rate specified in the note. The court rejected a defense based upon a statute of limitation, finding that the period for filing suit had been extended by an interest payment made on April 24, 1979. The court also awarded $8,246.10, which it determined was the correct balance of the merchandise account, plus statutory prejudgment interest. This sum included the beginning balance of $2,294.77, which the court found to be "in effect, an account stated."

Havens' counterclaim for an accounting and profit-share from the joint hog-raising ventures was denied. The court found Havens had failed to keep records of these ventures. The court declined to construct a true accounting from the minimal records and opinion testimony presented and, therefore, granted no relief to Havens.

## I

We will examine each claim in turn, first addressing the error asserted by Havens with respect to the promissory note. Havens does not challenge the note's validity. Instead, he argues that any claim on the note was barred by the five-year limitation period prescribed by I.C. § 5–216 for written contracts. At trial, Modern Mills successfully contended that, pursuant to I.C. § 5–238, the promise to pay was renewed by an interest payment. This statute provides:

> No acknowledgment or promise is sufficient evidence of a new or continuing contract by which to take the case out of the operation of this chapter, unless the same is contained in some writing, signed by the party to be charged thereby; *but any payment of principal or interest is equivalent to a new promise in writing, duly signed, to pay the residue of the debt.* [Emphasis added.]

Modern Mills points to $638.60 credited to the note's interest on April 24, 1979, less than five years before the suit was commenced. This credit apparently was part of a payment by the mill for grain delivered to it by Havens. The grain payment had been allocated three ways. A portion of the payment was contained in a check issued jointly to Havens and the Farmer's Home Administration. Another portion of the payment was used to offset a cash advance given earlier to Havens. The balance of $638.60 was applied as a payment on interest accrued on Havens' promissory note. Modern Mills introduced carbon copies of an unsigned receipt and of the stub from the FmHA check as evidence of this interest payment. Each included notations indicating that $638.60 had been applied to interest on Havens' note. The mill's former manager testified that Havens had instructed that the sum be applied to the note.

Havens objected to introduction of the copies of the receipt and check stub. He noted that the relevant notations had been added in ink after the original was produced. He testified that he was not aware of this application of his credit, and believed it had been applied to his open account. The exhibits were admitted. Havens notes that Modern Mills did not make the related grain settlement sheet for this transaction available to the court. He argues the evidence did not adequately support the court's conclusion that the promise had been renewed. We are not persuaded.

As with partial payment of a debt, the primary question is whether the notations and testimony were sufficient evidence of an acknowledgment of the debt. *See generally* Annotation, *Limitations—Payment—Identification,* 142 A.L.R. 389, 414 (1943). The party asserting a renewal of the promise bears the burden of proof. *See Joseph v. Darrar,* 93 Idaho 762, 472 P.2d 328 (1970). Here, the trial court specifically found, "Havens agreed that the sum of $638.60 would be applied to accrued interest on the note." Our review is limited to ascertaining whether the evidence supports the findings of fact, and whether the findings support the conclusions of law. *Dalton v. South Fork of Coeur d'Alene River Sewer District,* 101 Idaho 833, 623 P.2d 141 (1980). Trial court findings will not be set aside unless clearly erroneous. I.R.C.P. 52(a). Furthermore, we will not

substitute our opinion of a witness' credibility for that of the trier of fact. *Erhardt v. Leonard*, 104 Idaho 197, 657 P.2d 494 (Ct.App.1983).

Conflicting testimony was presented on the question of renewal of the note by the credited payment. Havens argues that certain testimony of Modern Mills' witnesses was impeached and, therefore, the entire testimony of those witnesses should be rejected. He cites *In re Stone's Estate*, 78 Idaho 632, 308 P.2d 597 (1957), and similar cases. However, these cases stand for the proposition that the fact-finder *may* reject the additional, noncorroborated testimony of an impeached witness, not that it *must* be rejected. Although the form of the alterations on the face of the exhibits may render them suspect, the trial judge apparently was persuaded that these changes were made in response to Havens' directions. The court's finding is supported by substantial evidence and will not be disturbed. Therefore, we affirm the court's decision with respect to the promissory note.

## II

### A

We turn next to Havens' merchandise account with Modern Mills. This account commenced in early 1975, following execution of the promissory note discussed in Part I, which had closed Havens' then existing merchandise account with Modern Mills. The 1975 account remained open until 1981. Although able to document most entries on the account, Modern Mills did not provide evidence of items prior to August of 1975, when the account balance stood at $2,294.77. Modern Mills sought to avoid being required to prove the amounts of specific debits prior to that date. Modern Mills argued that the August, 1975, balance represented an uncontested figure. Because of the absence of supporting documentation for the balance due as of August, 1975, Havens disputed the accuracy of that balance.

The trial court determined there was no infirmity in Modern Mills' proof of the account. The court applied an "account stated" approach to the beginning, August, 1975, balance. The court held that:

> The testimony and the ledger, the rendering of the ledger UARCO tickets to Havens on a monthly basis, Havens' failure to dispute the same, and Havens making payments on the carried-over amount are, in the court's view, evidence of the correctness of the account balance at the time. The ledger's beginning balance (See Ex. C) under the circumstances is, in effect, an account stated—the court so finds. In any event, it is not the $2294.77 balance that is subject to the attack launched by defendant, but rather the November 6, 1975 balance of [$516.77] which existed just prior to a cash loan to Havens on November 12, 1975.[2]

On appeal, Havens contends the court erred in reaching its "account stated" conclusion. We disagree.

An account stated is "a document, a writing, which exhibits the state of account between parties and the balance owed one to the other, and when assented to, either expressly or impliedly, it becomes

2. The items to which the trial court refers appear on Exhibit C as follows:

| Date | Charges | Credits | Balance |
|------|---------|---------|---------|
| | | Balance Forward | $2294.77 |
| Aug. 12, 1975 | $152.87 | | 2447.64 |
| Aug. 19, 1975 | $ 17.91 | | 2465.55 |
| Aug. 19, 1975 | $ 33.98 | | 2499.53 |
| Sep. 12, 1975 | 33.98 | | 2533.51 |
| Oct. 01, 1975 | 25.26 | | 2558.77 |
| Oct. 10, 1975 | | $1000.00 | 1558.77 |
| Oct. 14, 1975 | | $1000.00 | 558.77 |
| Oct. 15, 1975 | 8.00 | | 566.77 |
| Nov. 06, 1975 | | 50.00 | 516.77 |
| Nov. 12, 1975 | 150.00 | | 666.77 |

a new contract.... [T]he account, in order to constitute a contract, should appear to be something more than a mere memorandum; it should show upon its face that it was intended to be a final settlement up to date, and this should be expressed with clearness and certainty." *Davidson Grocery Co. v. Johnston,* 24 Idaho 336, 345, 133 P. 929, 931–32 (1913); *see also Tolmie v. San Diego Fruit and Produce Co.,* 57 Idaho 631, 68 P.2d 61 (1937). *See generally,* 2 RESTATEMENT (SECOND) OF CONTRACTS § 282 (1981); 15 S. WILLISTON, TREATISE ON THE LAW OF CONTRACTS § 1862 (3rd ed. 1972); 6 A. CORBIN, CORBIN ON CONTRACTS § 1303 (1962). The transaction must be understood by the parties as a final adjustment of the respective demands between them and of the amount due. *O'Harrow v. Salmon River Uranium Development, Inc.,* 84 Idaho 427, 373 P.2d 336 (1962); *see also Barnes v. Huck,* 97 Idaho 173, 540 P.2d 1352 (1975).

■ "The mere rendition of an account by one party to another does not show an account stated. There must be some form of assent to the account—that is a definite acknowledgement of an indebtedness in a certain sum." *Shaw v. Lobe,* 58 Wash. 219, 108 P. 450, 451 (1910). Assent must appear in some form. *Id.* In some circumstances, assent may be inferred from a failure to timely object when a statement is rendered by one party to another. *Argonaut Ins. Cos. v. Tri-West Constr.,* 107 Idaho 643, 691 P.2d 1258 (Ct.App.1984); *Meagher v. Kavli,* 251 Minn. 477, 88 N.W.2d 871 (1958); 15 S. WILLISTON, *supra,* § 1863. Also, a debtor may show assent by making a part payment on the account. *Richey v. Pedersen,* 100 Cal. App.2d 512, 224 P.2d 100, 105 (1950); *see also,* 1A C.J.S. *Account Stated,* § 20, p. 91 (1985).

■ In this case the parties had done business on open account for years. Modern Mills presented testimony indicating ledger copies and other statements had been provided to Havens. These documents satisfied the "writing" requirement of *Davidson Grocery.* These witnesses also testified that Havens voiced no objection to these accounts as rendered. The trial court found that copies of the account records were delivered to Havens during 1975, that Havens failed to dispute these statements, and that he made payments thereon. Therefore, the court determined that the balance forward, shown on the ledger beginning in August, 1975, was an account stated. We hold the evidence was sufficient to support the court's determination.

■ Havens also argues that the sum treated by the court as an account stated in 1975 could not constitute a "final adjustment" because the account remained open. We disagree. As defined in *Davidson Grocery Co. v. Johnston,* 24 Idaho at 345, 133 P. at 932, an account stated must "show upon its face that it was intended to be a final settlement *up to date....*" (Emphasis added.) The sum need only be "final" in the sense that it represents an amount to which there was mutual assent. *See also Kugler v. Northwest Aviation, Inc.,* 108 Idaho 884, 702 P.2d 922 (Ct.App.1985). Accounts stated and open accounts are not mutually exclusive. The first item in an open account may be an unpaid account stated. *Piper v. Salem,* 48 Ariz. 314, 61 P.2d 399 (1936); *see also Merrick v. United States Rubber Co.,* 7 Ariz.App. 433, 440 P.2d 314 (1968). The court applied the proper law to substantial and competent evidence. Therefore, the court's conclusion—that the beginning balance on the ledger was, in effect, an account stated—will not be set aside.

**B**

■ Next, Havens contends that substantial and competent evidence was not submitted to support transactions charged to his account after August, 1975. We find Havens' assertion to be without merit. In an open account action, the plaintiff must prove each item claimed. *Merrick v. United States Rubber Co., supra.* For items after September of 1975, Modern Mills presented ledgers reflecting each charge or credit in addition to the "UARCO tickets" for nearly every transaction. The

trial court found this evidence sufficient to meet the plaintiff's burden of persuasion in establishing the balance due on the account. We will not usurp the trial court's role of weighing the evidence.

### C

Havens also asserts that the four-year statute of limitation for oral contracts, I.C. § 5–217, barred many items in this account. Modern Mills responds that the statute of limitation was not raised at trial and, therefore, may not be raised on appeal. In the alternative, Modern Mills argues that the statute had not actually expired because it did not start to run either until the last charge (if the account was mutual) or, in any event, until the last payment on the account. As explained below, we believe the statute of limitation defense is properly raised on appeal but fails on its merits.

The affirmative defense of the statute of limitation, and the particular statute which is applicable, must be asserted in a responsive pleading. *Resource Engineering, Inc. v. Siler*, 94 Idaho 935, 500 P.2d 836 (1972); I.R.C.P. 8(c). The defendant bears the burden of establishing the applicability of the statute. But, the answer need only assert a bar by the particular section. *Joseph v. Darrar, supra;* I.R.C.P. 9(h). The plaintiff may introduce any evidence bringing the claim within an exception to the limitation statute. *Joseph v. Darrar, supra.*

Here, Havens raised the oral-contract statute of limitation, in his answer to this claim. The trial court's decision did not address this defense. Havens argues that nothing more was required to prove this defense, as the plaintiff's case-in-chief included evidence of the date of each item charged. We agree. We are unable to see what more Havens need do to raise his defense. Therefore, the issue is not barred from consideration on appeal.

However, Modern Mills also contends that, like the promissory note, collection of the merchandise account balance was not time-barred under I.C. § 5–238 because of payments on the account. Its point is well taken. The evidence showed that, in July, 1980, Havens sold 14,400 pounds of barley to the mill and that the sale proceeds were credited to the balance of Havens' merchandise account. This payment was within a four-year period before suit was filed for collection of the account in March 1984. A payment on account "remove[s] the debt from the operation of the statute of limitations pursuant to I.C. § 5–238." *Joseph v. Darrar*, 93 Idaho at 768, 472 P.2d at 334. Since the complaint in the present case was filed within four years after the last payment by Havens, it was timely brought and was not barred by the statute of limitation.[3]

### D

Finally, Havens attacks the court's purported allowance of interest on the merchandise account. Havens argues that the trial court incorrectly allowed interest by applying the "law of merchants" to this case. Havens points to the court's reliance upon *Rangen, Inc. v. Valley Trout Farms, Inc.*, 104 Idaho 284, 658 P.2d 955 (1983), and upon I.C. § 28–32–201 as confirmation of this error.

Havens' attack is wide of the mark. Our review of the trial court's decision reveals that the judge relied upon *Rangen* and the statute to explain that an eighteen percent finance charge included in the accounting was not usurious. The "law of merchants" apparently did not enter into the court's reasoning. The trial court relied upon Modern Mills' Exhibit G, a recapitulation of the merchandise account, to arrive at the final award. This exhibit separated principal debits and interest charges into separate running balances. Simple interest of eighteen per cent per annum was assessed as called for on the face of the charge slips.

---

**3.** Havens also argues that the "account stated" found by the court to exist in 1975 was time-barred. However, Modern Mills' cause of action was not based on a theory of account stated. The court's finding served only as a form of proof of an item of the merchandise account; the merchandise account itself was not—as we have held—barred by the applicable statute of limitation, as a result of payments on the account.

Payments were credited to the interest balance with any remainder being applied to reduce the principal. Although the court affirmed the interest rate, and, implicitly, this application of credit, the court's final award included only the principal balance. Modern Mills has not appealed from the court's failure to award the remaining interest balance of $1,066.40 calculated at eighteen percent. Instead, the court awarded prejudgment interest of eight and twelve percent, during different time periods, consistent with then-applicable provisions of I.C. § 28–22–104. We find no error in the court's calculation or award of interest in respect to the merchandise account.

### III

Next, we examine Havens' counterclaim seeking recovery on the joint venture to raise pigs for profit. Modern Mills supplied feed and paid for weiner pigs. Havens supplied the facilities and labor. Havens complains that profits were reasonably expected, but no share was ever received. He sought an accounting and a rightful profit share. Modern Mills contends each venture resulted in a loss, which was borne by the mill.

The trial court denied any relief to Havens, concluding that the court could not construct a true accounting from the evidence presented. "The rule that the party who is seeking affirmative relief has the burden of proof is one which necessarily underlies all our procedure." *Jaycox v. Varnum*, 39 Idaho 78, 92, 226 P. 285, 289 (1924). Hence, Havens bore the burden of proof on this counterclaim. The trial court found, and we concur, that the records and opinion evidence presented were too sparse for the court to determine whether any profits were earned. Havens failed to prove that any profits were owed. However, this conclusion does not end our inquiry.

Havens also sought an accounting from Modern Mills. Both parties agree that the hog-raising arrangements were joint ventures. The parties agree that when Havens no longer retained any of the hogs involved, these ventures were concluded. However, there appears to have been no formal winding up of any of the joint ventures.

"The rule is well settled that parties engaged in a joint venture are entitled to an accounting in equity at the termination thereof." *Tolmie v. San Diego Fruit and Produce Co.*, 57 Idaho 631, 643, 68 P.2d 61, 66 (1937). A partner may be relieved of the duty to account by a finding that an accounting would serve no useful purpose, *Gianakos v. Magiros*, 238 Md. 178, 208 A.2d 718 (1965), by all other partners acquiescing in the failure to keep proper records, A. BROMBERG, CRANE AND BROMBERG ON PARTNERSHIP 384 (1968), or by fulfilling the duty.

Our examination of the record reveals no sound basis for denial of Havens' right to an accounting. Havens' role in this venture was to raise pigs in a "workmanlike" manner. He reasonably could have assumed that Modern Mills was keeping adequate and complete records of the costs and revenues from pigs, which were owned by Modern Mills. He had objected to the amounts debited for feed. This objection was repeated at trial. He attempted to establish that the bottom-lines of those ledgers were contrary to any professional expectation.

At trial, Modern Mills presented ledger sheets and associated charge and credit slips pertaining to each of the joint ventures. The court found the final entry in each of the ledgers were "merely account closing entries." Those records indicated a loss in each joint venture. The court also noted that Havens had failed to keep adequate records. Although it might prevent a successful challenge to any final accounting, the failure of Havens to keep his own records does not, *per se*, relieve his partner of the duty to account.

We have examined the documents contained in the record. The trial court did not specifically find that these records provided an adequate accounting, and neither do we. The ledgers include debits made with minimal explanation. Numerous er-

rors and discrepancies in Modern Mills' accounts were identified at trial, which, although corrected, render the remaining records suspect. Absent a specific conclusion of acquiescence by Havens, of the uselessness of an accounting, or of the sufficiency of the accounting rendered, we cannot affirm the trial court's denial of Havens' right to an accounting. We remand the case for proceedings on Havens' counterclaim consistent with the above discussion. We express no opinion regarding the expected result of any formal accounting.

### IV

Last, we consider Havens' contention that the trial court erred by refusing to grant a new trial. Havens argued that he failed to anticipate that his receipt, monthly, of the ledger copies would be a basis for the court's decision and, therefore, failed to offer testimony or other evidence in rebuttal. Although raising the issue, Havens has not briefed it on appeal. At trial, Havens testified that he had not received copies of these documents. On substantial and competent evidence, the trial court found to the contrary. The trial court's determination not to grant a new trial will not be overturned absent manifest abuse of discretion. *Stout v. Westover*, 106 Idaho 533, 681 P.2d 1008 (1984). Havens has not been able to fit his failure to further rebut within the provisions of I.R.C.P. 59(a). The trial court described the evidence of receipt, reaffirmed its findings, and denied the motion. The court saw no reason to reopen or retry the issue. We concur.

However, in our review of the trial court's decision we have discovered several inexplicable calculations, which have not been questioned on this appeal. Because this case is being remanded, we call attention to these items for possible correction. The trial court noted that a $464.12 charge representing joint venture losses had mistakenly been included in Havens' personal account. Modern Mills stipulated that this charge was in error, because all joint venture losses were to be borne by the mill. As noted, the court utilized one of Modern Mills' exhibits, Exhibit G, to calculate the amount due on this account. Apparently the court believed that this exhibit did not include the $464.12 charge. However, our examination reveals that this particular debit was, in fact, still included, but out of chronological order. This May 31, 1978, charge appeared following a January 15, 1979, item, and apparently was overlooked by the court.

The trial court also recalculated the sum due Modern Mills by removing one erroneous debit and by correcting for a debit which should have been a credit. Despite not awarding finance charges on this account, the court inexplicably reduced the principal due by the finance charges on these sums. We also are unable to reproduce the court's method of calculating the amount of these particular finance charges.

The judgment of the trial court for recovery by the plaintiff on the promissory note and the merchandise account is affirmed, subject to correction by the court as we have explained. The trial court is directed to amend the judgment as determined to be appropriate and consistent with this opinion. Postjudgment interest shall accrue from the date of the original judgment on the portion of the judgment not reduced by this remand. *Dursteler v. Dursteler*, 112 Idaho 594, 733 P.2d 815 (Ct.App.1987). The order of the district court denying recovery to the defendants on their counterclaim is reversed and remanded for further proceedings. On appeal, both parties have prevailed in part, therefore no costs or attorney fees are awarded. Case remanded.

BURNETT and SWANSTROM, JJ., concur.