664

HARTFORD ACCIDENT AND INDEMNITY COMPANY *v.*
CAPITOL HOME IMPROVEMENT COMPANY, INC., ET AL.

CIRCUIT COURT

SECOND CIRCUIT
FILE No. CV 2-619-7298

Memorandum filed August 21, 1964

*Goldstein & Peck,* of Bridgeport, for the plaintiff.

*Blawie & Belinkie,* of Bridgeport, for the defendants.

WISE, J. In this action the plaintiff seeks to recover premiums due and owing on workmen's compensation insurance policies issued to the defendants. The policy issued by the plaintiff to

the defendant Capitol Home Improvement Company, Inc., was evidenced by the policy number 31WH-805157 and extended from September 13, 1959, through September 13, 1960. Under this policy, the plaintiff claims premiums due in the amount of $838.80. The policy issued by the plaintiff to the defendant Capitol Home Improvement Company of Hartford, Inc., was evidenced by policy number 31WH-806106 and extended from January 11, 1960, through January 11, 1961. Under this policy, the plaintiff claims premiums due in the amount of $577.70. The amounts of these premiums were the result of an audit of each policy by the plaintiff and were based on charges for clerical personnel, salesmen and installers. The defendants do not dispute the correctness of the mathematical calculation of the audit, but they deny any liability for premiums due as to the installers, whom they claim were independent contractors not covered by the Workmen's Compensation Act. However, with respect to the premiums charged for the clerical personnel and salesmen, in the amount of $75.80 against the defendant Capitol Home Improvement Company, Inc., and in the amount of $91.49 against the defendant Capitol Home Improvement Company of Hartford, Inc., the respective defendants admit owing the plaintiff, and to that extent the plaintiff is entitled to judgment. The defendants have not paid any portion of the amounts claimed by the plaintiff.

The defendants were engaged in the retail business of selling aluminum storm windows and doors, jalousies and other allied aluminum products and of contracting with homeowners for the installation of the same. The method employed by the defendants in obtaining orders for installations was to send their salesmen to the prospective customer's home for the purpose of ascertaining just what was

to be furnished and installed. Upon agreement as to this and the cost, a written contract was then entered into between the customer and the defendants. In all the installation contracts, the cost of labor was included in the total price. The customer paid the full contract price to the defendants. The installers received payment for their labor directly from the defendants. Said contracts provided that all work was to be done properly and correctly by the defendants, and included a one-year service guarantee by the defendants. The installers were employed by the defendants to furnish the labor necessary to do the work on a per-job basis for an amount agreed upon between them and not on an hourly or weekly basis. The defendants did not withhold social security or income taxes from the payments made to the installers. The installers furnished their own labor, tools, equipment and transportation. The installers were given work orders for each job which specified just what work was to be performed. If it developed that additional or other work was required or requested by the customer, the installers had no authority to proceed until they had first obtained such authorization from the defendants. The defendants required that the work be done properly and correctly by the installers and, if it was not so performed, that the installers correct the work. Also, upon complaint by the customer within the one-year guarantee period, the defendants required the installer to return to the job and complete the work properly, if he was available; if he was not, another installer would be employed to do the work. There were occasions when the defendants discharged installers on jobs because they were not able to perform their work properly.

The defendants claim that the installers were independent contractors; that, as such, they were

not covered by the Workmen's Compensation Act; and, therefore, that the plaintiff could not charge a premium as to them.

The plaintiff contends that it had a right to charge a premium as to the installers (1) because they were in fact employees; (2) by the contractual right reserved under the policy, since there was a possibility that liability might be imposed on the plaintiff; and (3) because of its contractual obligation to defend any action instituted by the installers. The pertinent provisions of the policies follow.

Under the designation "Conditions," paragraph 1: "When used as a premium basis, 'remuneration' means the entire remuneration, computed in accordance with the manuals in use by the company, earned during the policy period by (a) all executive officers and other employees of the insured engaged in operations covered by this policy, and (b) *any other person performing work which may render the company liable under this policy* for injury to or death of such person in accordance with the workmen's compensation law. 'Remuneration' shall not include the remuneration of any person within division (b) foregoing *if the insured maintains evidence satisfactory to the company* that the payment of compensation and other benefits under such law to such person *is secured by other valid and collectible insurance* or by any other undertaking approved by the governmental agency having jurisdiction thereof." (Italics supplied.)

Under the designation "Insuring Agreements," paragraph 2: The plaintiff shall "(a) defend any proceeding against the insured seeking such benefits and any suit against the insured alleging such injury and seeking damages on account thereof, even if such proceeding or suit is groundless, false or fraudulent; but the company may make such investi-

gation, negotiation and settlement of any claim or suit as it deems expedient; (b) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended proceeding or suit, but without any obligation to apply for or furnish any such bonds; . . . (d) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request."

Prior to the final audit, which was started after the termination of the policy period, the plaintiff requested Mr. Goldbloom, who was the treasurer and secretary as well as the manager of each defendant corporation, to furnish proof that the installers were covered by other insurance during such policy period. In fact, the plaintiff, through Mr. Lyons, its payroll auditor, on one occasion, together with Goldbloom, attempted to ascertain whether there was such other coverage. There was none; nor did the defendants furnish the plaintiff any evidence that the payment of compensation and other benefits under the Workmen's Compensation Act to such person was secured by other valid and collectible insurance or by any other undertaking approved by the governmental agency having jurisdiction thereof. The defendants knew that in the absence of evidence of such coverage they would be charged a premium for the installers. Although the plaintiff never knew, during the period of each policy and prior to the final audit, who and how many installers were employed by the defendants, such installers were included in the coverage under the policies and the plaintiff assumed such coverage.

Policies of compensation insurance, including the insurance policies in question, are written contracts, to be interpreted by the same general rules

as any other written contract and enforced in accord with the real intent of the parties. *Miller Bros. Construction Co.* v. *Maryland Casualty Co.,* 113 Conn. 504, 513. While it is true that where the terms of a policy are of doubtful meaning, the construction most favorable to the insured will be adopted; *Porto* v. *Metropolitan Life Ins. Co.,* 120 Conn. 196, 200; there is no room for this rule of construction where the terms of the policy are plain, clear and unambiguous. *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 310; *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 58; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 513. "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494.

As noted hereinbefore, the policies provide, under the designation "Conditions," for the right of the plaintiff to charge a premium computed on the basis of remuneration to "(a) all executive officers and other employees of the insured ... and (b) *any other person performing work which may render the company liable . . . .*" (Italics supplied.) This was a contractual right (a right which the plaintiff could and did provide for in the policies) to be compensated for the possibility that a claim or suit may render the plaintiff liable. The existence of the possibility of such liability and the assumption of such a risk, aside from the question of, or a final adjudication as to, whether or not the installers were independent contractors, entitled the plaintiff to charge a premium therefor. It is the assumption of this burden of paying possible compensation that gives the plaintiff the right to charge premiums. *Commissioners of State Ins. Fund* v. *Riving-*

*ton Farm Dairy,* 16 App. Div. 2d 58 (N.Y.). The responsibility assumed and the risk and inconvenience to which the plaintiff was exposed, of themselves, constituted a consideration for the premium charged. *Lewis* v. *Phoenix Mutual Life Ins. Co.,* 39 Conn. 100, 106; see also *Finlay* v. *Swirsky,* 103 Conn. 624, 631.

As noted hereinbefore, by the terms of the policies the plaintiff agreed to defend any proceeding instituted against the defendants by installers seeking benefits thereunder. This is a positive undertaking by the plaintiff requiring it to expend funds in so doing. The plaintiff's duty to defend has a broader aspect than its duty to indemnify. There is a distinction between liability and coverage. The obligation of the plaintiff to defend does not depend on whether the injured party will successfully maintain a cause of action. The policy requires the plaintiff to defend irrespective of the ultimate outcome. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* supra; *Lewis* v. *Phoenix Mutual Life Ins. Co.,* supra.

Aside from the reasons already stated by the court entitling the plaintiff to make the disputed premium charges, the court will act upon the additional reason, to wit, that the installers were in fact employees and therefore fell under that classification rather than that of independent contractors under the Workmen's Compensation Act. The claim of the defendants that they lacked control over the installers and that therefore the installers were not employees but independent contractors cannot be sustained by the evidence. Upon the entire evidence in the case, the court finds as facts that the defendants retained control over the installers and had a right to direct their work, to ask them to correct it and to stop the work if it was not being

properly performed. The installers entered into contracts of service with the defendants subject to their direction and control. The fact that the installers used their own tools and equipment and furnished their own transportation is not decisive. The failure of the defendants to withhold social security or income taxes from the installers does not preclude a finding that they were in fact employees. *Caraher* v. *Sears, Roebuck & Co.,* 124 Conn. 409, 414; *Jack & Jill, Inc.* v. *Tone,* 126 Conn. 114, 119.

In *Kaliszewski* v. *Weathermaster Alsco Corporation,* 148 Conn. 624, 629, in which the facts were very similar to those in the instant case, the court stated: "One is an employee of another when he renders a service for the other and when what he agrees to do, or is directed to do, is subject to the will of the other in the mode and manner in which the service is to be done and in the means to be employed in its accomplishment as well as in the result to be attained. *Bieluczyk* v. *Crown Petroleum Corporation,* 134 Conn. 461, 465 . . . . The controlling consideration in the determination whether the relationship of master and servant exists or that of independent contractor exists is: Has the employer the general authority to direct what shall be done and when and how it shall be done—the right of general control of the work? *Jack & Jill, Inc.* v. *Tone,* 126 Conn. 114, 119 . . . ; *Cumbo* v. *E. B. McGurk, Inc.,* 124 Conn. 433, 436 . . . . *The test of the relationship is the right to control. It is not the fact of actual interference with control but the right to interfere which makes the difference between an independent contractor and a servant or agent.* [Italics supplied.] *Caraher* v. *Sears, Roebuck & Co.,* 124 Conn. 409, 413 . . . . Certainly Weathermaster, which was bound by contract to perform the work of re-siding in a workmanlike

manner, had the right to ensure that result by supervision and control of the applicators. The master and servant relationship existed even though the plaintiff was not on Weathermaster's pay roll, used his own equipment, occasionally bought and paid for needed supplies, for which he was reimbursed by Weathermaster, and was paid $15 per square instead of regular weekly or daily wages."

The issues are found in favor of the plaintiff.

Judgment may enter for the plaintiff to recover from the defendant Capitol Home Improvement Company, Inc., the sum of $838.80, and from the defendant Capitol Home Improvement Company of Hartford, Inc., the sum of $577.70, together with costs.