691 P.2d 1258

ARGONAUT INSURANCE COMPANIES, Plaintiff-Respondent-Cross Appellant,

v.

TRI–WEST CONSTRUCTION COMPANY, Defendant-Appellant-Cross Respondent.

No. 14467.

Court of Appeals of Idaho.

Nov. 21, 1984.

David W. Cantrill (argued), Willis E. Sullivan, III, Cantrill & Skinner, Boise, for defendant-appellant-cross respondent.

Myron D. Gabbert, Jr., Larry C. Hunter (argued), Moffatt, Thomas, Barrett & Blanton, Boise, for plaintiff-respondent-cross appellant.

SWANSTROM, Judge.

This appeal stems from an action to collect an insurance premium. For several years, the plaintiff, Argonaut Insurance Companies, provided workmen's compensation insurance coverage to the defendant, Tri-West Construction Company. A dispute arose over the amount of premium due under the contract in 1977 and Argonaut brought suit. The district court held that Tri-West owed an additional premium of $5,009 to Argonaut. Tri-West appealed and Argonaut filed a cross-appeal. We affirm the judgment.

The facts may be stated briefly as follows. Tri-West's annual insurance premium was based upon the remuneration it paid to its employees. The premium was calculated by applying a specified rate to the amount earned by Tri-West's employees. Different rates were applied to the different classes of employees. For example, a lesser rate was applied to clerical help than was applied to sheet metal workers. In calculating the annual premium, Argonaut first estimated the total cost of that premium for the next one-year period and then billed Tri-West for a portion of that cost. At the end of the one-year period, Argonaut audited Tri-West's payroll ledgers to arrive at a final total premium. After crediting the prepaid premium, Argonaut then billed Tri-West for the additional premium owed.

This procedure was followed for the period ending May 1, 1977. Argonaut had an independent auditor examine Tri-West's books and then prepared an invoice, requesting an additional premium of $15,149. This premium was calculated by Argonaut using information obtained by the auditor, including a listing of more than a hundred persons who received remuneration from Tri-West during the policy period. Argonaut caused this invoice to be delivered to Tri-West through Argonaut's "producer," Insurance Associates Corporation (IAC). Tri-West refused to pay, asserting that Argonaut had included, in its calculation, the earnings of outside salesmen, subcontractors, and others who were not intended to

be covered by Tri-West's workmen's compensation insurance. This, according to Tri-West, produced an inflated figure for the total premium.

A meeting between Argonaut and Tri-West was arranged to resolve their differences. Present at this meeting were Argonaut's collection manager, Tri-West's president and owner William B. Cafarelli, and Dick Marmillion of IAC. Following this meeting and after receiving additional information from Tri-West regarding the classification of the personnel on its payroll ledger, Argonaut sent a letter and a new invoice to Tri-West. The letter stated that, based upon additional information furnished by Tri-West, Argonaut had dropped seventy-eight "subcontractors" from the list, leaving fifty-five persons who had received remuneration from Tri-West. Argonaut enclosed a "revised final" invoice for the annual premium calculated upon the remuneration Tri-West paid to those fifty-five persons. The letter gave credit for the deposit already paid and stated a balance due of $5,009. Tri-West, however, also failed to pay this invoice.

Argonaut then brought suit, first alleging that Tri-West owed it $5,009; later alleging, in an amended complaint, that $15,149 was due and owing. The district court held that the $5,009 invoice constituted an "account rendered" which became an "account stated" upon Tri-West's acceptance of it and that, therefore, Tri-West owed Argonaut $5,009. The court further held that the result would be the same even had there been no account stated. The evidence, the court indicated, was sufficient to support a judgment for Argonaut under the insurance contract in the amount of $5,009. Tri-West appealed, contending that the evidence was insufficient to support the district court's judgment. Argonaut cross-appealed, arguing that the court should have awarded it $15,149.

## ACCOUNT STATED

In *O'Harrow v. Salmon River Uranium Development, Inc.*, 84 Idaho 427, 373 P.2d 336 (1962), our Supreme Court said:

To constitute an account stated the transaction must be understood by the parties as a final adjustment of the respective demands between them and the amount due. An account stated becomes a new contract which exhibits the state of account between the parties and the balance owing one to the other, and two things must appear, first a mutual examination of the claims of each other by the parties; and second, that there is a mutual agreement between them as to the correctness of the allowance and disallowance of the respective items or claims and of the balance as struck upon the final adjustment of the whole account and demands on both sides .... An account stated must receive the assent of both parties; the minds of the parties must meet for an account becomes stated only by reason of acquiescence in its correctness.

*Id.* at 430–31, 373 P.2d at 338. The "account, in order to constitute a contract, should appear to be something more than a mere memorandum; it should show upon its face that it was intended to be a final settlement up to date, and this should be expressed with clearness and certainty." *Davidson Grocery Co. v. Johnston,* 24 Idaho 336, 345, 133 P. 929, 931–32 (1913).

■ Here, the district court found that the invoice was more than a mere memorandum and that Argonaut intended that it be a final settlement of the account. These findings are not clearly erroneous and therefore will not be set aside on appeal.

■ The district court also found that the evidence was sufficient to show that Tri-West had assented to the account rendered. Such assent, which transforms an account rendered into an account stated, may be either express or implied. *O'Harrow v. Salmon River Uranium Development, supra.* Assent is implied from a failure to object to a billing within a reasonable period of time. *See Tri-County Insurance, Inc. v. Marsh,* 608 P.2d 190 (Or.Ct.App.1980). Such a failure raises a rebuttable presumption of assent. "To give an account rendered the force of an account stated because of silence on the part of the one receiving the account, the circumstances must be such as to support an inference of agreement as to the correctness of the account. Such an inference may be rebutted." *Old West Enterprises, Inc. v. Reno Escrow Co.,* 86 Nev. 727, 476 P.2d 1, 3 (1970).

Tri-West contends that it did not remain silent, but objected to the account rendered. The court, however, found that "[Tri-West] did not object to the $5,009.00 billing for additional premium." An objection to an account rendered must be "more than a mental operation on the part of the person receiving the account, and must be made to the party rendering the account, *or to his duly authorized agent, or at least to one whom the debtor believes to be such.*" 1 Am.Jur.2d ACCOUNTS AND ACCOUNTING § 30 at 405 (1962) (emphasis added).

The record supports a finding that Tri-West did not make any response or objection to Argonaut directly. However, Tri-West's owner and president, Cafarelli, did testify that when he received the $5,009 billing, "I complained to my insurance agent." When asked why he did not bother to contact Argonaut, Cafarelli replied, "I wasn't doing business with Argonaut Insurance Company directly. I was dealing with The Insurance Associates." The question therefore becomes whether IAC was the agent of Argonaut—or whether Tri-West believed IAC to be Argonaut's agent—for the purpose of receiving an objection to the account rendered. "The burden of proving agency is upon the party who asserts it." *Transamerica Leasing Corporation v. Van's Realty Company,* 91 Idaho 510, 517, 427 P.2d 284, 291 (1967).

Here, neither party was apparently made aware of the need to put in evidence on the agency issue. The theory that there had been an account stated was not advanced by either party at trial—even as a "back-up" position. On appeal, Tri-West has asserted the agency relationship between Argonaut and IAC in order to demonstrate that Cafarelli's objection to IAC precluded

a finding that there had been an account stated.

Admittedly, in the record before us on appeal, there is evidence upon which we could hold that IAC was the agent of Argonaut for the purpose of receiving payments for insurance policies "produced" by IAC, and for other purposes as well. *See Squires v. Implement Dealers Mut. Ins. Co.*, 188 Neb. 590, 198 N.W.2d 469 (1972). On the other hand, had the parties been made aware in the district court of the importance of the agency question, there may have been evidence adduced to show that IAC was more properly to be considered the agent of the insured, Tri-West. *See, e.g., Daniels v. Nationwide Mut. Ins. Co.*, 258 N.C. 660, 129 S.E.2d 314 (1963).

In the absence of an opportunity for the parties to present evidence and argument to the trial court on the issue, and in the absence of any findings by the trial court on the agency question or on the question of whether Cafarelli did or did not make an objection to IAC, the purported agent of Argonaut, we cannot affirm the district court on the account stated theory. Unless the district judge can be affirmed on the theory which was pled by Argonaut, i.e., that Tri-West owes Argonaut at least $5009 additional premium under the policy, it will be necessary to remand the case for additional evidence and findings.

## RECOVERY UNDER CONTRACT

The district court, as noted above, held that "[e]ven had the account not been so settled, [Tri-West] owes [Argonaut] $5,009.00 as an additional premium for insurance provided to [Tri-West] by [Argonaut] under the policy of insurance." The court based its holding, in part, on the following findings.

5. The insurance policy between Plaintiff and Defendant was a contract between them whereby Plaintiff was to furnish insurance, which it did, and whereby Defendant was to pay premiums and to maintain and furnish to Plaintiff records of information necessary for premium computation.

6. The policy required Defendant to maintain records needed and to furnish such records to Plaintiff so Plaintiff could compute the total final premium to be charged.

. . . .

8. The Defendant did not maintain and furnish to Plaintiff adequate records so Plaintiff could compute the final premium due as agreed under the insurance contract.

9. Plaintiff had great difficulty trying to get Defendant to furnish information as to the number and classification of persons receiving remuneration from Defendant during the policy period.

. . . .

14. The Plaintiff made all reasonable attempts to obtain necessary records from Defendant, which continued even after filing suit, but such attempts were consistently thwarted by Defendant.

The policy itself stated:

When used as a premium basis, "remuneration" means the entire remuneration, computed in accordance with the manuals in use by the Company, earned during the policy period by (a) all executive officers and other employees of the insured engaged in operations covered by this policy, and (b) any other person performing work which may render the Company liable under this policy for injury to or death of such person in accordance with the workmen's compensation law. "Remuneration" shall not include the remuneration of any person within division (b) foregoing if the insured maintains evidence satisfactory to the Company that the payment of compensation and other benefits under such law to such person is secured by other valid and collectible insurance or by any other undertaking approved by the governmental agency having jurisdiction thereof.

. . . .

The insured shall maintain records of the information necessary for premium computation on the bases stated in the Declarations, and shall send copies of

such records to the Company at the end of the policy period and at such times during the policy period as the Company may direct. If the insured does not furnish records of the remuneration of persons within division (b) of the definition of remuneration foregoing, the remuneration of such persons shall be computed in accordance with the manuals in use by the Company.

Tri-West argues that, in spite of the contract language, Argonaut had the burden of proving at trial the fifty-five persons it used in calculating the premiums due were in fact employees and not outside salesmen or independent contractors. Tri-West further contends that Argonaut failed to produce sufficient evidence to support the district court's judgment. In any event, Tri-West argues that the maximum allowable recovery was proven to be $2,800.

*Frankfort Marine Accident & Plate Glass Insurance Co. v. California Artistic Metal & Wire Co.*, 28 Cal.App. 74, 151 P. 176 (1915), presents a similar fact situation. In that case, the insurance company sued the employer for premiums allegedly due on two workmen's compensation insurance policies. The premiums were to be based on the total remuneration paid by the employer to its employees. The policies stated the employer would have the duty to keep adequate records and the insurer would have the right to inspect the employer's books. At the end of the policy term, the insurer received information that the employer had paid more to its employees than had been anticipated, thereby entitling the insurer to additional premiums. The employer, however, refused to allow the insurer access to its books. The insurer brought suit to require the employer to produce its records and requested that the court determine, based upon those records, the additional premiums due under the contracts. The court awarded the insurer $2,600 in additional premiums. The employer appealed, contending that the contract excluded a certain class of employee (*i.e.*, "inside employees") from consideration in determining the total remuneration

and that therefore the employer owed less than $2,600.

The California Court of Appeals affirmed the district court, holding that even if—as the employer contended—the contracts were ambiguous and were actually intended to cover only "outside employees," it was incumbent upon the employer to preserve an accurate record as to the compensation paid to each class of employees, that is, to "inside employees" as well as to "outside employees." The court further stated:

In a sense, as before suggested, the defendant, by the provision requiring it to keep an accurate account of the pay roll to which the policies related, was to that extent impressed with the character of agent of the plaintiff. It imposed upon the defendant the performance of a certain duty to the plaintiff involving the latter's rights under the contracts. At any rate, the defendant, as shown, was the only party to the contract authorized to keep a record of its pay roll for the purposes of the contracts. Indeed, as is plainly manifest, it was the only one in a position to do so. The plaintiff was not authorized to perform that duty and had it been it would have been impracticable for it to have done so, or, indeed, as was the case when ultimately it sought to inspect the defendant's books, it might have been met with a refusal of the privilege of performing that duty. It was therefore up to the defendant to discover to [sic] the plaintiff the pay roll affected by the contracts. And if, as the defendant contends, the compensation paid to outside [employees] was intended to constitute the exclusive basis of the amount to be paid to the plaintiff as premiums, the burden was upon the defendant to show what proportion of the total amount paid as compensation to all its [employees] was paid to the inside [employees].

*Frankfort Marine Accident & Plate Glass Ins. Co. v. California Artistic Metal & Wire Co.*, 151 P. at 181. *Accord Hartford Accident and Indemnity Company v.*

*Capitol Home Improvement Company*, 2 Conn.Cir. 664, 205 A.2d 192 (1964).

Argonaut's collection manager testified that the company had to hire an independent auditor to examine Tri-West's payment records kept in Salt Lake City. He stated that Argonaut in this manner was able to obtain only a "raw" list of 133 names showing the payment to each person but with no accompanying explanation as to how each payee had earned remuneration from Tri-West. He arranged a meeting with Cafarelli when Cafarelli objected to a billing based on this list. Cafarelli provided only limited additional information—after months of delay—at which time Argonaut agreed to base its premium on a reduced list of fifty-five persons. Using this list Argonaut's collection manager calculated the additional premium due to be $5,009, computed according to provisions of the policy and the manuals in use by the company.

At trial Cafarelli was asked about two lists furnished by his company to Argonaut during the discovery process. The lists named sixteen "employees" and 108 "subcontractors" and the amounts paid to each. However, when questioned about the lists at trial, Cafarelli admitted that the "subcontractors" list actually contained the names of subcontractors, outside salesmen, a few employees, a doctor, a lawyer and some others whose status he could not identify at the time of trial. Evidence was also admitted which showed that one of the "subcontractors" named by Cafarelli had filed a "Notice of Injury and Claim for Benefits" with Argonaut, indicating that he was an employee of Tri-West during the term for which premiums are sought. Although the name "Cafarelli" appears on the line for "Signature of Employer," Cafarelli denied that it was his signature and he denied that he had ever seen the claim.

As part of its case Tri-West called Argonaut's collection manager and had him compute the premium due on the policy based upon Cafarelli's trial testimony as to the number of Tri-West employees. The collection manager testified the balance due

would be approximately $2,800 using Cafarelli's figures. Tri-West thus argues that $2,800 is the maximum amount that the court could have awarded Argonaut.

Weighing the testimony and determining the credibility of the witnesses is the exclusive function of the trier of the fact—in this case the trial judge. He was not bound to accept the testimony of Cafarelli as to the number of persons employed by Tri-West during the year in question. More importantly, aside from the proof at trial as to the actual number of Tri-West employees, there was ample evidence to support the judge's findings that Tri-West did not fulfill its contractual duty to maintain adequate records and furnish such records to Argonaut so it could compute the proper remuneration which establishes the basis for calculating the premium due. Accordingly, under the terms of the policy, Argonaut was entitled to charge a premium based upon remuneration paid to "any other person performing work which may render the company liable under this policy for injury to or death of such person in accordance with the workmen's compensation law."

In fact, there was evidence indicating that Argonaut was presented with and did pay a claim relating to one of the "subcontractors" listed by Tri-West. Although it had a duty to do so, Tri-West never furnished adequate information to enable Argonaut to accurately determine the extent of its exposure to liability to those fifty-five persons receiving remuneration from Tri-West. Therefore, under the terms of the policy Argonaut was entitled to compute its premium upon the remuneration paid to at least fifty-five persons, treating the ones who were claimed to be subcontractors as if they were sheet metal workers employed by Tri-West. *Hartford Accident and Indemnity Company v. Capitol Home Improvement Company, supra.*

Argonaut has claimed that it was exposed to liability for workman's compensation to more than fifty-five persons because of Tri-West's contractual failure to docu-

ment who were truly employees and who were outside salesmen, subcontractors or employees of subcontractors. This, in fact, may be true. However, when Argonaut agreed to reduce its initial claim from $15,149 to $5,009 it did so on the basis of some limited information supplied by Tri-West. Argonaut apparently accepted that information and used it to arrive at the list of fifty-five persons upon which the lower additional premium was calculated.

At trial the judge was provided with evidence of three different calculated figures for the amount of additional premium due. The first was $15,149 based on the initial list of approximately 133 "employees." The second was $5,009 based on a revised list of fifty-five named "employees." The last was approximately $2,800 based upon Cafarelli's testimony at trial as to persons he then said had been employees during the policy period. There was substantial, creditable evidence before the district court showing that even Argonaut conceded—early in the dispute—it had no exposure for all of the 133 persons on the first list. The district court gave the following reasons for imposing liability on the basis of the fifty-five person list rather than the first one:

> ... the [$5009 revised final] statement rendered by [Argonaut] to [Tri-West], if not assented to as an account stated by [Tri-West's] unexplained silence, at least constituted an acknowledgement by [Argonaut] that out of the 133 persons who received remuneration from [Tri-West] and were claimed by [Tri-West] to be subcontractors, there had been sufficient information submitted to satisfy [Argonaut] that all but 55 of them were in fact subcontractors. [Tri-West] failed to thereafter produce information to show any of the 55 were subcontractors rather than employees, or to submit any proof of that at trial. Even [Tri-West's] answers when cross-examined in this regard were uncertain.

We do not believe that Argonaut has shown that the district court erred in refusing to allow recovery based solely on the first list of 133 persons. Neither was the district judge bound to fix liability on the basis of the third, smaller list of employees supplied by Cafarelli at trial.

Accordingly, we believe the district court judgment should be affirmed. However, because we cannot uphold the court's ruling that there was an account stated, or an open account, we are constrained to hold that the award of attorney fees to Argonaut under I.C. § 12–120(2) must be vacated. This statute does not authorize an award of fees because Argonaut's cause of action was not one "to recover on an open account, account stated ... or contract relating to the purchase or sale of goods, wares, or merchandise."

An award of attorney fees could be made under I.C. § 12–121, within the discretion of the trial court. We note this case was filed prior to the effective date of rule 54(e)(1) I.R.C.P. Therefore, that rule does not impose any limitations upon the exercise of the judge's discretion unless the judge chooses to apply the rule's standards to this case. *See Ladd v. Coats*, 105 Idaho 250, 668 P.2d 126 (Ct.App.1983), and *Haskin v. Glass*, 102 Idaho 785, 640 P.2d 1186 (Ct.App.1982). We decline to speculate how the district court would have exercised its discretion under § 12–121. Accordingly, we will remand to the trial court to determine whether the fees should be allowed. If they are, then the full amount of the judgment as previously entered shall bear interest at the judgment rate from November 30, 1981, the date of the entry of judgment. If attorney fees are not awarded, the judgment, as modified, shall bear interest from the same date.

Costs to Argonaut. No attorney fees awarded on appeal.

WALTERS, C.J., and BURNETT, J., concur.