797 P.2d 146

Larry A. NEEDS and Karla Needs, d/b/a Thama Construction & Supply, Plaintiffs–Counter Defendants–Respondents,

v.

Gary HEBENER and Sue Hebener, husband and wife, Defendants–Counter Claimants–Third Party Plaintiffs–Appellants,

and

Dennis Needs and Barbara Needs, d/b/a Mountain Gem Log Homes, Third Party Defendants–Respondents.

No. 17433.

Court of Appeals of Idaho.

Aug. 1, 1990.

**440**

Eismann & Kosonen, Coeur d'Alene, for appellants. D. Samuel Eismann argued.

J. Ray Cox, Jr., Coeur d'Alene, for respondents.

SWANSTROM, Judge.

This is an appeal from a judgment upon a jury verdict in favor of Larry and Karla Needs for materials and labor furnished in the construction of a log home for Gary and Sue Hebener. The Hebeners raise several issues on appeal. First, they assert that the court erred procedurally and substantively in giving the jury preliminary and written instructions. Second, that the court erred in allowing the Needs to amend their complaint to include claims based upon account stated and quantum meruit. Third, that the court committed error by admitting a demand letter into evidence. Finally, that the court erred by refusing to grant their motions for directed verdict, judgment notwithstanding the verdict, or new trial. For reasons discussed below, we affirm the judgment.

On appeal, the evidence in the record, and all reasonable inferences, are viewed in favor of the jury verdict. *Challis Irrigation Co. v. State,* 107 Idaho 338, 689 P.2d 230 (Ct.App.1984) (review denied). Viewed in this light, the record discloses the following facts. In April, 1979, the Hebeners entered into a written contract in which Mountain Gem Log Homes agreed to supply logs and certain other materials for construction of a log home. This contract was signed by Gary Hebener and a sales representative for Mountain Gem Log Homes, a manufacturing business owned by Dennis and Barbara Needs. Essentially, this was a "materials" only contract, assuring Hebener of a supply of logs and beams at fixed unit prices. The contract gave Hebener the right to reject unsuitable materials after delivery. According to Hebener, certain express and implied warranties were made concerning these materials.

Hebener wanted to be his own "general contractor" for his home, but he wanted the basic log structure to be erected by Larry Needs, Dennis' brother, who was experienced in such construction. Thus, the parties orally agreed that Larry Needs would assemble the log frame, construct bearing walls, subfloors, stairs, decking, and a subroof so as to "dry-in" the interior. Hebener had plans drawn for the home. These were used in the preparation of estimates for the cost of the materials and labor which Mountain Gem Log Homes and Larry Needs were to provide. The plans included an attached garage but initially Hebener was undecided whether it should be of frame or log construction. Before construction began, Hebener made substantial changes in the planned construction of the home.

In the beginning the Hebeners were to make payments for materials and labor to Mountain Gem. As construction proceeded, problems arose between the Hebeners and Mountain Gem because of the Hebeners' failure to pay when billed. Initial estimates were greatly exceeded by actual costs of both labor and materials. Moreover, Hebener and Mountain Gem's representative were not "getting along." In any event, in December, 1979, the representative notified Hebener that no further materials would be furnished to him because of the delinquent payments. Hebener then asked Larry Needs if he would be willing to continue working on the home. Needs agreed after receiving Hebener's assurance that he would be paid as soon as the home

was "dried in" so that the Hebeners' bank would release proceeds of a loan. Larry Needs obtained some of the additional materials needed to finish the work from Mountain Gem Log Homes. He completed the work he had agreed to do in early March, 1980.

On March 18, the Needs prepared and delivered to the Hebeners a statement showing a balance of $11,095.38 owing for labor and materials furnished in the construction work. In April the Hebeners paid the Needs $1,000 on that account, leaving a balance of $10,095.38. No further payments were made by the Hebeners. The Needs provided the Hebeners with monthly statements of the amount due and had several discussions with the Hebeners concerning payment of the account. Throughout these occasions, the Hebeners never disputed the amount of the bill; they simply stated that they did not yet have the money. On October 18, 1980, Karla Needs wrote a letter to the Hebeners requesting that payment be made. The Hebeners failed to respond to the letter. This letter was followed by a demand letter written by an attorney representing the Needs. Again, the Hebeners made no reply.

Larry and Karla Needs then filed this action to collect the $10,095 they claimed was due. The Hebeners filed an answer and counterclaim, naming Dennis and Barbara Needs, doing business as Mountain Gem Log Homes, as third party defendants. The Hebeners alleged breach of contract, breach of warranties, negligent construction and misrepresentation on the part of the sellers and builder of the home. They sought damages including cost overruns and repairs exceeding $50,000. The jury's verdict awarded Larry and Karla Needs $10,095. The jury's verdict awarded no damages to the Hebeners on the counterclaim and third-party complaint. After the district court denied their motions for judgment notwithstanding the verdict and for a new trial, the Hebeners appealed.

## INSTRUCTIONS

■ We begin by addressing the Hebeners' claim of error in the giving of preliminary oral instructions and in the submission of certain written instructions. The issue of error in giving the preliminary instructions is raised for the first time on appeal. Generally, issues not raised at the trial court level will not be heard for the first time on appeal. *Hoppe v. McDonald*, 103 Idaho 33, 644 P.2d 355 (1982). This policy applies to procedural errors and encourages litigants to raise the issue at the trial court level, to give the trial judge an opportunity to correct any errors before harm occurs or before the error becomes incurable. Here, the Hebeners assert that the district court erred by orally giving preliminary instructions to the jury at the start of the trial without first allowing the attorneys an opportunity to read and consider those instructions and to make appropriate objections as required by I.R.C.P. 51(a)(1). The record does not show that the attorneys were given any preview of the preliminary instructions. Accordingly, we will address the issues raised. However, the initial question to decide is whether this procedural failure prejudiced the Hebeners in any way. We believe not. Generally, the instructions informed the jury of the nature of the action, the trial procedure, the jurors' responsibilities and similar matters helpful to the jury. No showing of prejudice has been made.

■ We now turn to the Hebeners' claims of substantive error in the preliminary instructions. Our standard is one of free review. The Hebeners did not object at any time during the trial to any of these instructions, nor did they ask for any curative instructions. Nevertheless, under the present law, the failure to object at trial is not fatal. A party need not object to an instruction that is actually given by the trial court in order to preserve the issue for appellate review. *Suitts v. First Security Bank of Idaho*, 110 Idaho 15, 713 P.2d 1374 (1985); *Country Ins. Co. v. Agric. Dev., Inc.*, 107 Idaho 961, 695 P.2d 346 (1984).

■ Here, the Hebeners contend that the judge erred in not following recommendations contained in the Idaho Jury Instructions (IDJI) as required by I.R.C.P. 51(a)(2). Specifically, the judge told the

jurors that "witnesses are presumed to speak the truth and you should endeavor to reconcile the testimony with that presumption...." He also told them various ways that a witness might be "impeached." Giving these instructions is not recommended. *See* IDJI 130, 132. Finally, the judge chose to give a "claims of the parties" instruction as part of the final instructions, rather than at the beginning of the trial as recommended. IDJI 102. However, it is not error per se to fail to follow recommendations in IDJI. I.R.C.P. 51(a)(2) does not make IDJI recommendations mandatory. *See, e.g., Packard v. Joint School Dist. No. 171,* 104 Idaho 604, 661 P.2d 770 (Ct.App. 1983). Moreover, there is no contention here that the disfavored instructions were prejudicial. We hold that they were not.

■ The Hebeners also contend the judge erred in telling the jurors that if his preliminary instructions should conflict with the final instructions he would give at the close of the trial, the final instructions "shall govern and be controlling." We again hold that no error was committed. As to the final jury instructions, the Hebeners contend the court's instruction No. 27 which qualified an earlier instruction on express warranties, was argumentative and contradictory. We conclude that the two instructions would have been better if integrated into one instruction, but instruction No. 27 was not erroneous. Finally, the Hebeners contend it was error for the court to instruct the jury on plaintiffs' theories of account stated and quantum meruit. We reach those issues in the following discussion.

### AMENDMENT OF PLEADINGS

■ The Hebeners contend the court erred by permitting the Needs to amend their complaint to include claims for an account stated and quantum meruit. The amendment of pleadings to conform to the evidence is governed by I.R.C.P. 15(b). The rule states that "[w]hen issues not raised by the pleading are tried by *express* or *implied consent* of the parties, they shall be treated in all respects as if they had been raised in the pleadings." (Em-

phasis added). The determination whether an issue has been tried with the consent of the parties is a matter for the trial court's discretion. *Lynch v. Cheney,* 98 Idaho 238, 561 P.2d 380 (1977).

### A. Account Stated Theory

■ The Hebeners did not expressly consent to try this case on the theory of an account stated. However, the judge ruled there was implied consent to try this case on the theory. Although the Needs' complaint filed in 1982 does not state clearly that plaintiffs' theory is one of account stated, the allegations are sufficient to encompass such a claim. Early in the litigation, the Needs responded to a pretrial order with a statement showing that they were suing on "an oral contract and account stated." They repeated this statement in another response filed shortly before trial. The Needs' opening statement to the jury was consistent with this theory. The Hebeners did not object when the Needs offered into evidence the March 18, 1980, final statement "on Mr. and Mrs. Hebeners' account." Finally, when the Needs offered the so-called "dun" letter Kathy Needs wrote on October, 1980, their counsel argued that it was "clearly relevant to the account stated portion (sic) in the agreed amount of money that was billed." The Needs made no response to this argument. In summary, we conclude that the record supports the district judge's finding of implied consent to try the case on the theory of an account stated.

■ We also conclude there was substantial evidence to support a jury verdict for plaintiff in the amount of $10,095.38 on the theory of account stated. As was said in *Davidson Grocery Co. v. Johnston,* 24 Idaho 336, 345, 133 P. 929, 931–32 (1913):

An account stated is a document, a writing, which exhibits the state of account between [the] parties and the balance owed one to the other, and when assented to, either expressly or impliedly, it becomes a new contract.... But the account, in order to constitute a contract, should appear to be something more than a mere memorandum; it should show

upon its face that it was intended to be a final settlement up to date, and this should be expressed with clearness and certainty.

The district judge's findings on implied consent are supported by this Court's opinion in *Argonaut Ins. Cos. v. Tri–West Constr. Co.*, 107 Idaho 643, 691 P.2d 1258 (Ct.App.1984). In *Argonaut*, we upheld the district court's conclusion "that the invoice was more than a mere memorandum and that Argonaut intended that it be a final settlement of the account." *Id.* at 646, 691 P.2d at 1261. We cited *Tri–County Ins. Inc. v. Marsh*, 45 Or.App. 219, 608 P.2d 190 (1980), for the proposition that assent is implied from failure to object to a billing within a reasonable period of time. The failure to dispute a billing raises a rebuttable presumption of assent. To make an account rise to the level of an account stated, silence in response to the billing "must be such as to support an inference of agreement as to the correctness of the account." *Argonaut*, 107 Idaho at 646, 691 P.2d at 1261 (Ct.App.1984). In the present case, it is clear that the invoice dated March 18, 1980, represented the final statement of the account.

The Hebeners had numerous opportunities to object to the balance stated to be due. Substantial evidence shows that the Hebeners responded several times to the Needs' billings and inquiries about payment without raising any question concerning the amount. Seven months after sending the March 18, 1980, billing, Karla Needs wrote the Hebeners a letter enclosing another bill, this one showing that the Needs were "going to have to charge ... interest on the unpaid balance." This billing produced no response or objection from the Hebeners. Moreover, after receiving the March 18 billing, the Hebeners paid $1,000 on the account the following month. Part payment of an account may be evidence of assent to the account. *See Modern Mills, Inc. v. Havens*, 112 Idaho 1101, 739 P.2d 400 (Ct.App.1987). Accordingly, we hold the district court did not err either by denying the Hebeners' motion for a directed verdict on this theory or by giving an "account stated" instruction.

### B.  Quantum Meruit Theory

The Hebeners contend the trial court erred in allowing Larry and Karla Needs to amend their complaint during trial to allege a claim in quantum meruit, by instructing the jury on the quantum meruit theory, and by failing to grant a directed verdict for the Hebeners on the quantum meruit claim. We will briefly discuss each of these arguments.

It is not disputed that the Needs and the Hebeners orally agreed in December, 1979, that the Needs would go forward with certain work on the Hebeners' house which we have already described as necessary to "dry in" the structure. It is clear from the evidence that the Needs were to be paid for labor and materials when this stage of construction was reached. The parties did not agree upon or even discuss what the labor and material costs would be. In this situation the law implies a promise to pay the reasonable value of the services rendered to and accepted by the Hebeners. *Fairchild v. Mathews*, 91 Idaho 1, 415 P.2d 43 (1966). We believe it is clear from colloquy among counsel and the court that the Hebeners understood and agreed that quantum meruit, although not pleaded, was an issue in the case.

The thrust of the Hebeners' argument is that the Needs failed to submit proof of the reasonable value of the labor and services furnished. Therefore, the court should not have allowed the pleadings to be amended and the jury to be instructed on this theory. Moreover, he contends that after all of the evidence was submitted the court should have granted a directed verdict because of the failure of proof.

We will note first that even if the Needs failed to prove the reasonable value of his services he would be entitled to nominal damages. Thus, the trial court properly denied the motion for a directed verdict. *Hood v. Faulkner*, 47 N.C.App. 611, 267 S.E.2d 704 (1980). The reasonable value of services rendered is an objective measure and is usually determined largely by the nature of the work and the custom-

**444**

ary rate of pay for such work in the community and at the time the work was performed. *Id.;* 66 AM.JUR.2D, *Restitution and Implied Contracts* § 28 at 973 (1973).

Here, the only evidence submitted to show the value of the material and services furnished were the invoices and statements which the Needs periodically sent to the Hebeners. The trial court relied principally upon the March 18, 1980, statement sent by the Needs upon completion of the work. The court implicitly held that this statement—because it had not been disputed or questioned by the Hebeners until after this action was filed—was some evidence that the amount claimed, $11,095.38, was reasonable.

As we have already noted, not only was the March 18, 1980, final bill accepted without dispute, but the following month the Hebeners paid $1,000 on the bill. Thereafter, for several months, the Hebeners received statements for the $10,095.38 balance without disputing any of them. In at least one case of which we are aware, such circumstances were held to constitute sufficient proof of reasonable value and a jury verdict based thereon was upheld. *See Booe v. Shadrick,* 322 N.C. 567, 369 S.E.2d 554 (1988).

■ This case was submitted to the jury on alternate theories of recovery. However, the case went to the jury on a general verdict. While in our view a better practice would be to submit special verdicts on each theory, no error is assigned to the use of a general verdict form. "When a case is submitted to a jury on several alternative grounds and a general verdict is returned, we will affirm if the jury properly could have found for the prevailing party on any of the theories comprehended by the general verdict." *Cambelt Int'l. Corp. v. Dalton,* 745 P.2d 1239, 1241–42 (Utah 1987). Here, the Needs' proof of damages on their account stated claim and their quantum meruit claim was identical. The Needs' counsel argued only the account stated theory to the jury. Substantial competent evidence supported plaintiffs' claim under this theory. Accordingly, we conclude that no reversible error has been

shown in regard to submitting the quantum meruit theory to the jury.

## ADMISSION OF THE DEMAND LETTER

The Hebeners contend the trial court erred in deciding to admit into evidence the "dun" letter written by Kathy Needs on October 18, 1980, over the Hebeners' objection that the letter was not relevant and was prejudicial. Before considering this issue, we note our standard of review. "A trial court has broad discretion in the admission of evidence at trial and its judgment will only be overruled where there has been clear abuse of discretion." *Pline v. Asgrow Seed Co.,* 102 Idaho 827, 831, 642 P.2d 64, 68 (Ct.App.1982). In the exercise of its discretion, the trial court must first decide the question of relevancy. After a determination of the issue of relevancy has been made, the trial court must then consider whether the probative value of the proffered evidence outweighs its prejudicial effect. *State v. Beason,* 95 Idaho 267, 506 P.2d 1340 (1973).

■ I.R.E. 401 defines when evidence is relevant. Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. The Hebeners claim that the letter is irrelevant because the document is self-serving and because the contents of the letter lacks any probative value. However, the fact that the letter is self-serving only goes to the weight of the evidence, not to its admissibility. As to the probative value of the letter, the trial judge determined that the letter was relevant to establish that a written request for payment was made but no response was received. The Hebeners also argue that even if the letter is relevant the prejudicial effect outweighs the probative value of the evidence. I.R.E. 403. However, the trial judge balanced the prejudicial effect of the evidence against the probative value of the evidence and found that the probative value outweighed any potential danger of prejudice. After reviewing the record, we

find that the trial judge's decision to admit the letter was not an abuse of discretion.

## MOTION FOR JUDGMENT N.O.V.

We next consider the question of whether the court erred by refusing to grant the Hebeners motion for judgment notwithstanding the verdict. A motion for judgment n.o.v. based on I.R.C.P. 50(b) is treated simply as a delayed motion for a directed verdict and the standard for both is the same. *Quick v. Crane,* 111 Idaho 759, 763, 727 P.2d 1187, 1191 (1986); *Yazzie v. Sullivent,* 561 F.2d 183, 188 (10th Cir.1977). Whether a directed verdict *or* judgment n.o.v. should have been entered is a question for free review. *Pierson v. Brooks, supra.* "The appellate court asks, as did the trial court, whether there was substantial evidence supporting the jury's verdict or, in other words, whether reasonable minds could differ as to the verdict that should have been reached." *Id.* We have already held that the trial judge did not err in submitting the case to the jury on the theory of an account stated. This holding disposes of one of the Hebeners' grounds for judgment n.o.v. The Hebeners' other argument is that the jury ignored uncontradicted evidence favorable to the Hebeners on their counterclaims for breach of express warranties and for negligence. We have reviewed the extensive trial record. Without elaboration, we conclude that we must agree with the trial court's analysis of the evidence. While there was substantial evidence of the cost of making needed repairs to the dwelling which is virtually uncontroverted, the evidence as to the cause of the damage is conflicting. There is substantial evidence to support a finding by the jury that the damage was caused other than by any alleged negligence or breach of warranty by the Needs. Accordingly, we hold that the district judge did not err in his denial of the Hebeners' motion for judgment n.o.v.

## MOTION FOR NEW TRIAL

Our standard for reviewing the denial of a motion for a new trial under I.R.C.P. 59(a) is well known. The trial judge's decision will be upheld unless the judge has abused his discretion. *Pierson v. Brooks,* 115 Idaho 529, 768 P.2d 792 (Ct.App.1989) (review denied). On a motion for a new trial, the trial judge has broad discretion in determining whether the verdict is supported by the clear weight of the evidence. *Quick v. Crane, supra.* Here, for reasons already discussed, we conclude that the trial judge did not abuse his discretion in denying the motion for a new trial.

We affirm the judgment entered upon the verdict. Costs to respondents Needs. We also award attorney fees on appeal pursuant to I.C. § 12–120 in an amount to be determined under I.A.R. 41(d).

HART, J. Pro Tem., concurs.

BURNETT, J., participated in oral argument and subsequently voted to affirm, but resigned prior to issuance of the Court's opinion.