IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No.  34810

BLAIR GROVER and JOANN GROVER, )
husband and wife, )
 )
    Plaintiffs-Respondents, )
 )
v. )
 )
NORMA E. WADSWORTH, individually )
and/or NORMA E. WADSWORTH and )
JANE DOE, as personal representatives of )
the ESTATE OF A. EARL WADSWORTH, )
 )
    Defendants-Appellants. )
 )
 )

Twin Falls, November 2008 Term

2009 Opinion No.  37

Filed:  March 5, 2009

Stephen W. Kenyon, Clerk

Appeal from the Seventh Judicial District of the State of Idaho, Bonneville County.  Hon. Joel E. Tingey, District Judge.

The decision of the district court is <u>affirmed.</u>  This case is <u>remanded</u> to the district court for an order quieting title and determination of the final payment due on the note.  Attorney's fees and costs are awarded to Respondents.

Wright, Wright & Johnson, PLLC, Idaho Falls, for appellant.  David A. Johnson argued.

Beard, St. Clair, Gaffney, PA, Idaho Falls, for respondent.  John M. Avondet argued.

_____

W. JONES, Justice

    This dispute stems from the sale of a parcel of real property located in Idaho Falls.  Blair and Joann Grover (the Grovers) purchased the land subject to a note (the Note) issued by Earl and Norma Wadsworth (the Wadsworths).  The Grovers claim that the Note has been paid in full and that they are the owners of the parcel.  The Wadsworths claim that due to an error in the amortization table the Note had not been paid in full.  Both parties filed motions for summary

judgment and the district court granted the Grovers' motion. The Wadsworths appeal to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are generally not in dispute. In 1990 the Wadsworths entered into a contract with Dennis Jensen (Jensen) and William Gatson (Gatson) for the sale of land situated in Idaho Falls. Gatson and Jensen purchased the property for $115,000 with a down payment of $34,500 and signed a promissory note for $80,500. The Note provided for 240 monthly installments (20 years) of $777.28 at 10% interest. The payments began in October of 1990 and were scheduled to terminate in August of 2010.

In 1993 Jensen passed away, and Gatson took primary responsibility for the property.[1] In 1997, Gatson entered into a contract to sell the property to the Grovers. The Grovers were purchasing the property for their son who intended to operate a store on the land. The Grovers purchased the property for $104,000 which included assuming the Gatson-Jensen Note with the remaining purchase price to be paid in cash to Gatson-Jensen. Earl Wadsworth issued handwritten yearly amortization schedules and the current schedule showed the amount owing on the Note at the purchase date was $54,984.23. Based on that amortization schedule, as written in Earl Wadsworth's handwriting, the Grovers paid Gatson-Jensen $47,524.93 in cash at closing and assumed the Note with the presumed balance of $54,984.23 for the total purchase price of $104,000.[2] Gatson and Jensen assigned their rights in the property to the Grovers and the Wadsworths consented to the assumption of the Note and released Gatson and Jensen from liability under the Note.

The Grovers paid the monthly amounts owed and Earl Wadsworth continued to issue handwritten yearly amortization schedules which reflected the beginning balance owed as $54,984.23. In May of 2005, 8 years after the Grovers assumed the Note, Earl Wadsworth informed the Grovers that he had made an error in the amortization schedules and the balance was about $37,000 greater than the amount previously reflected in the amortization schedules.[3] Blair Grover responded with a letter stating that the Note would be paid in full in January or February of 2006 in accordance with the representation on the amortization schedules. The

---

[1] All references to Gatson-Jensen include Jensen's estate.
[2] Although the two numbers do not equate to $104,000, the total purchase price includes miscellaneous costs incurred during closing along with an earnest money deposit of $1,000.
[3] Appellant states that the difference is about $13,683.50, which is the difference at the time of closing in May of 1997. At the time of the "final payment" in February 2006 the difference amounts to about $37,000.

2

Wadsworths continued to accept the monthly payments following Grover's letter. The Grovers issued the "final payment" in February of 2006 and the Wadsworths refused to accept the payment. In March of 2006 Earl Wadsworth died.[4] In June 2006 the Grovers filed the present action under the theories of quiet title, estoppel, statute of limitations and implied contract. The Wadsworths counterclaimed under the theories of breach of contract, foreclosure of the property, and unjust enrichment.

In February of 2007 both parties filed cross-motions for summary judgment and in April 2007 the Honorable Judge St. Clair denied those motions and ordered the matter to trial. In September and October of 2007 the parties filed cross-motions for reconsideration on their motions for summary judgment. In the interim, the Honorable Judge St. Clair had retired and been replaced by the Honorable Judge Tingey. The court then granted the motions for reconsideration and subsequently granted the motion for summary judgment in favor of the Grovers. The Wadsworths appeal to this Court.

## ISSUES ON APPEAL

The following issues are presented to this Court on appeal:

1. Whether the district court erred by granting summary judgment in favor of the Grovers on the theory of account stated.
2. Whether the district court erred by granting summary judgment in favor of the Grovers on the theory of estoppel.
3. Whether the district court erred in granting the Grovers attorney's fees.
4. Whether the district court erred by failing to grant the Wadsworths' motion for summary judgment.
5. Whether the Grovers are entitled to attorney's fees on appeal.

## STANDARD OF REVIEW

This Court employs the same standard as the trial court in an appeal from an order granting summary judgment. *Infanger v. City of Salmon*, 137 Idaho 45, 46-47, 44 P.3d 1100, 1101-02 (2002). "All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Id.* at 47, 44 P.3d at 1102. Summary judgment will be granted if the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

---

[4] All actions taken by Norma Wadsworth individually and as the personal representative of the estate of Earl Wadsworth will be referred to in substantially the same manner as the actions taken by the Wadsworths collectively.

This Court freely reviews questions of law. *Id.* Only questions of law remain where there is no genuine issue as to any material fact. *Id.*

## ANALYSIS

**The district court erred by granting summary judgment in favor of the Grovers on the theory of account stated.**

"An account stated is a document, a writing, which exhibits the state of account between [the] parties and the balance owed one to the other, and when assented to, either expressly or impliedly, it *becomes a new contract*." *Needs v. Hebener*, 118 Idaho 438, 442, 797 P.2d 146, 150 (Ct. App. 1990) (emphasis added). "To constitute an account stated the transaction must be understood by the parties as a final adjustment of the respective demands between them and the amount due." *O'Harrow v. Salmon River Uranium Dev., Inc.*, 84 Idaho 427, 430-31, 373 P.2d 336, 338 (1962). Two things must be present (1) "a mutual examination of the claims of each other by the parties" and (2) an agreement to settle the respective claims with the final statement intending to be an "adjustment of the whole account and demands on both sides." *Id.* at 431, 373 P.2d at 338. That is, both parties must have a known bona fide dispute as to the amount owed for the theory of account stated to apply. In the present case, there was no dispute between the Grovers and the Wadsworths. The Grovers were merely a substituted party for the Gatson-Jensen contract. Gatson and Jensen were not parties to this action, so it is unknown whether the Grovers were a substituted party to a bona fide dispute. Further, there is no evidence that Wadsworth ever reached an agreement with either Gatson and Jensen or the Grovers to alter the amount due. This Court reverses the district court and holds that the theory of account stated is inapplicable in the present action because Gatson and Jensen, as the original contracting parties, are not parties to this action and neither party has submitted their sworn affidavits. Without such information there is a genuine issue of material fact as to whether there was a bona fide dispute and whether the "statement of account" was intended to be a final adjustment of the parties' claims.

**The district court did not err by granting summary judgment in favor of the Grovers on the theory of estoppel.**

The district court held that the Wadsworths were estopped from denying that the balance owed at the time the Note was assumed was $54,984.23. Although the district court incorrectly used the theory of promissory estoppel, this Court affirms the district court. "Where an order of

4

a lower court is correct, but based upon an erroneous theory, the order will be affirmed upon the correct theory." *Andre v. Morrow*, 106 Idaho 455, 459, 680 P.2d 1355, 1359 (1984).

Promissory estoppel requires that (1) one party's reliance on a promise creates a substantial economic detriment, (2) the reliance was or should have been foreseeable, and (3) the reliance was reasonable and justified. *Gillespie v. Mountain Park Estates, LLC*, 138 Idaho 27, 29, 56 P.3d 1277, 1279 (2002). The district court ruled that the Wadsworths were estopped from denying that the amount owed on the Note was $54,984.23. This Court agrees that the Wadsworths are estopped from denying the balance of the Note; however there was no underlying promise between the Wadsworths and the Grovers and therefore, promissory estoppel is the incorrect legal theory.

Quasi-estoppel prevents a party from asserting to another party's disadvantage a right that is inconsistent with a previous position. *C&G, Inc. v. Canyon Highway Dist. No. 4*, 139 Idaho 140, 144, 75 P.3d 194, 198 (2003). It applies when it would be unconscionable to allow the party to maintain the inconsistent position. *Garner v. Bartschi*, 139 Idaho 430, 437, 80 P.3d 1031, 1038 (2003). "For quasi estoppel to apply, the party to be estopped must have either gained some advantage against the other party, produced a disadvantage to the other party, or the other party must have been induced to change positions." *C&G, Inc.*, 139 Idaho at 145, 75 P.3d at 199.

The Grovers relied to their disadvantage on Wadsworth's position, which he maintained for 8 years, that the amount owed on the Note was $54,984.23 at the time Grover assumed the Note. Because the Gatson-Jensen contract required them to purchase the property for $104,000 less any amounts owed on the Note, Grover paid Gatson and Jensen approximately $13,000 more than was owed on the $104,000 purchase price. The Wadsworths argue that Blair Grover is a lawyer and should have been able to calculate the amount owed on the Note prior to assumption of the Note. Although this assertion may be true, Blair Grover had no knowledge of the prior dealings between Gatson-Jensen and the Wadsworths and whether the balance on the Note had been adjusted for any reason. It is true that the Grovers knew that pre-payments on the Note were allowed but subject to complicating provisions; however, that fact does not rule out the possibility that Gatson-Jensen and the Wadsworth had waived that provision or adjusted the amount due for another reason. The Grovers relied to their disadvantage on Wadsworth's representation of the balance and continued to rely on Wadsworth's handwritten balances for 8

5

years following the assumption of the Note. Further, Wadsworth continued to accept payment even when Grover informed Wadsworth by letter that the Note would be paid according to the amortization statement. It wasn't until the last payment was tendered, nearly a year after Wadsworth became aware of the error, that the present action was filed.

This Court affirms the district court and holds that the Wadsworths are estopped from claiming that the Grovers owe them $37,000 more than what was reflected in the amortization statement as represented by Wadsworth. As noted by the district court, "the Wadsworths did not accept the tendered 'final payment' by [the] Grovers. [Therefore,] the Wadsworths remain entitled to receive from the Grovers the principal amount of $54,984.23 plus the accrued interest."

**The district court did not err in granting the Grovers attorney's fees pursuant to I.C. § 12-120(3), finding that this transaction is a commercial transaction.**

The district court granted the Grovers attorney fees under I.C. § 12-120(3) which allows for an award to the prevailing party "[i]n any civil action to recover on an open account, account stated, note, bill, negotiable instrument, guaranty, . . . and in any commercial transaction." I.C. § 12-120(3). The district court found that the "commercial transaction" was integral to the law suit, and therefore, an award was proper. This Court affirms that decision.

The decision to award attorney's fees is within the discretion of the trial court, unless the award is based on the interpretation of a statute. *Contreras v. Rubley,* 142 Idaho 573, 576, 130 P.3d 1111, 1114 (2006). This Court freely reviews statutory interpretation, but will affirm a discretionary award unless there is a clear abuse of that discretion. *Id*. A trial court does not abuse its discretion if, (1) the trial court correctly perceived the issue as one of discretion, (2) the trial court acted within the bounds of its discretion and applied the correct legal standard, and (3) the trial court reached its decision through an exercise of reason. *Id*.

Here, the trial court correctly perceived that the award of attorney's fees was mandatory under the statute if the case involved a commercial transaction. Further, the court recognized and cited to previous decisions of this Court holding that the commercial transaction must be integral to the claim in order to warrant recovery. The underlying dispute arises from the sale of commercial property for a commercial use. *Lexington Heights Dev., LLC v. Crandlemire*, 140 Idaho 276, 287, 92 P.3d 526, 537 (2004). This Court finds no error in the district court's decision.

6

**The district court did not err in granting the Grovers attorney's fees even though Blair Grover is a member of the firm that represents the Grovers in the present action.**

The Wadsworths claim that any attorney fees awarded to Beard, St. Clair, Gaffney P.A. is improper because Blair Grover is a member of that firm. The Wadsworths' argument primarily rests on *Swanson & Setzke, Chtd. v. Henning* which held that lawyer litigants who appear *pro se* may not be awarded attorney's fees in a civil action. *Swanson & Setzke, Chtd. v. Henning*, 116 Idaho 199, 774 P.2d 909 (Ct. App. 1989).

I.C. § 12-120(3) contains no specific language to preclude an award to *pro se* litigants. "However, the phrase 'attorney fee' may be interpreted to denote a monetary obligation (a fee) paid or owed from one person (a client) to another person who has provided legal representation (an attorney). Under this interpretation, an attorney fee 'presupposes a relationship of attorney and client.'" *Swanson & Setzke, Chtd.*, 116 Idaho at 200, 774 P.2d at 910 (quoting *Davis v. Parratt*, 608 F.2d 717, 718 (8th Cir. 1979)).

In this case, Blair Grover is not a *pro se* litigant; he hired a law firm to represent him and his wife in this matter. Although Blair Grover is a member of the firm he hired, that fact is not dispositive. There is no authority or rationale presented by the Wadsworths why this fact alone should be dispositive. "[T]he underlying intent of such [attorney fee] statutes is not to generate *pro se* litigation but to help litigants obtain counsel by providing a potential source of fees in meritorious cases." *Id.* There is no evidence presented that the relationship between Blair Grover and his attorneys at Beard, St. Clair, Gaffney P.A. was altered by his membership in the firm. All the aspects of an attorney-client relationship would still be present, and there is no indication that Blair Grover would share in the fees collected on this action. This Court affirms the lower court's award of attorney's fees.

**The district court did not err by failing to grant the Wadsworths' motion for summary judgment.**

The Wadsworths filed a motion for summary judgment by way of (1) breach of contract, (2) foreclosure on the property, and (3) unjust enrichment. This Court does not review denials of summary judgment after a judgment is made on the merits. *Gunter v. Murphy's Lounge, LLC*, 141 Idaho 16, 26, 105 p.3d 676, 686 (2005). "An order denying a motion for summary judgment is not an appealable order itself, nor is it reviewable on appeal from a final judgment." *Hunter v. Dep't of Corr.*, 138 Idaho 44, 46, 57 P.3d 755, 757 (2002). For that reason, this Court declines

to review the denial of the Wadsworths' motion for summary judgment because there is a final order to review granting the Grovers' motion for summary judgment.

**The Grovers are entitled to attorney's fees on appeal.**

The Grovers make a claim for attorney's fees as the prevailing party on appeal under I.C. § 12-120(3). This Court awards attorney's fees to the Grovers as the prevailing party on appeal in a civil action based on a commercial transaction.

## CONCLUSION

For the foregoing reasons this Court affirms the district court's decision. This case is remanded to the district court for an order quieting title and determination of the final payment due on the Note. Attorney's fees and costs are awarded to Respondents.

Justices BURDICK, HORTON and Justice Pro Tem TROUT, **CONCUR.**

J. JONES, Justice, specially concurring.

I concur in the Court's opinion, recognizing that the result is unfortunate for Mrs. Wadsworth. She ends up getting approximately $13,700 less in principal than she should have received on the Note and has also lost the interest that would have accrued on that amount from April of 1997. However, her loss was not occasioned by the actions of the Grovers. The Grovers paid the full $104,000 that they agreed to pay for the property but, unfortunately, approximately $13,700 of that amount, which should have gone to the Wadsworths, went, instead, to Gaston-Jensen. That resulted from what appears to be an erroneous calculation of the Note pay-off by Mr. Wadsworth. As the district court observed, Gaston-Jensen may have been the appropriate source of redress. In oral argument before the Court, the Wadsworths' attorney indicated that pursuit against Gaston-Jensen was barred by the statute of limitations at the time the problem came to light, but that does not make the Grovers any more responsible to provide redress. Mr. Grover could have made more inquiry into the issue regarding the pay-off, as it appears the balance of the Note was smaller than one might have expected at the time the Grovers took responsibility for it, but, on the other hand, it was not unreasonable for the Grovers to accept the pay-off figure provided by Mr. Wadsworth.