[No. 60933-1.    En Banc.    August 4, 1994.]

SUNNYSIDE VALLEY IRRIGATION DISTRICT, *Petitioner*, v. ROZA IRRIGATION DISTRICT, *Respondent*.

*Charles C. Flower, Patrick Andreotti,* and *Flower & Andreotti,* for petitioner.

*Cowan, Walker, Jonson, Moore, Nickola & Heye, P.S.,* by *Thomas A. Cowan,* for respondent.

UTTER, J. — Sunnyside Valley Irrigation District (Sunnyside Valley) appeals a Court of Appeals decision reversing a judgment in its favor in an action by Sunnyside to recover unpaid drain maintenance expenses from Roza Irrigation District (Roza). The issue on appeal is whether a counterclaim by Roza for the recovery of overpayments between 1980 and 1984 is barred by the doctrine of "account stated". We hold the Court of Appeals erred, and reinstate the determination of the trial court.

Sunnyside Valley and Roza are irrigation districts located within the Sunnyside Division of the Yakima Project. In 1958, the United States Bureau of Reclamation (Bureau) entered into separate contracts with Sunnyside Valley and Roza for the construction of a joint system of drain channels and the rehabilitation of approximately 31 miles of existing channels. The purpose of the project was to provide adequate outlet drain channels for surface flows and seepage waters from the irrigation districts. To the extent possible, Sunnyside Valley was to perform the construction and

rehabilitation work, while Roza agreed to pay 60 percent of the construction cost. Upon completion, the operation and maintenance of the drainage works was to be transferred to the Sunnyside Board of Control, the operation agency for Sunnyside Valley. Roza agreed to pay 50 percent of the operation and maintenance costs on the basis of annual estimates. In practice, Sunnyside Valley billed Roza monthly as actual work was performed.

In 1975, Roza began paying the maintenance bills submitted by Sunnyside Valley. Although Roza made inquiries about what it viewed as the high cost of maintenance, it continued to pay the amounts billed. On several occasions, Roza and Sunnyside Valley met to discuss issues involving maintenance.

In 1985, Roza for the first time refused to pay Sunnyside Valley's bills, complaining of poor maintenance and excessive costs. Roza informed the Bureau that the two districts had disagreements they had been unable to resolve and asked the Bureau to intervene. In response, Sunnyside Valley acknowledged that it needed to place more emphasis on drain maintenance, but insisted that Roza had not substantiated allegations of excessive costs.

On January 14, 1986, before the Bureau completed its preliminary investigation, Sunnyside Valley sued Roza to recover Roza's share of maintenance costs for 1985 and its estimated share of costs for 1986. Roza filed a counterclaim seeking recovery of alleged overpayments made from 1975 to 1984.

Roza moved to dismiss Sunnyside Valley's complaint for failure to join the Bureau. The trial court denied the motion. Sunnyside Valley argued that any claim for reimbursement of excessive costs paid prior to 1984 was barred by the doctrine of account stated and that any claim for payments made before February 11, 1980, was barred by the statute of limitations. The trial court granted Sunnyside Valley's motion for summary judgment, holding the statute of limitations and the doctrine of account stated barred Roza's claims for alleged overpayments made before 1984. Clerk's Papers (Findings of Fact and Conclusions of Law), at 15.

The remaining claims proceeded to a bench trial. The court found Sunnyside Valley had properly maintained about 78.5 miles of drains but had not performed sufficient annual maintenance on two sections. The court awarded Sunnyside Valley $106,794.44 and granted Roza an offset for excessive application of an herbicide and for the maintenance costs of the two sections that Sunnyside Valley had not properly maintained.

The Court of Appeals reversed and remanded. It held the trial court failed to judge the adequacy of Sunnyside Valley's maintenance work against the standard stated in the maintenance contract. The court also held there was no account stated in this case and, accordingly, that Roza's counterclaim for the periods 1980 through 1984 was not barred. Finally, the court held that if the trial court, employing the proper contractual standard, determines Sunnyside Valley breached the contract, it must redetermine whether Roza's claims for overpayments are barred by the statute of limitations.

Sunnyside appeals only that portion of the Court of Appeals decision relating to the issue of account stated.

I

ACCOUNT STATED

The Restatement (Second) of Contracts § 282(1) (1981) defines an account stated as "a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor." The Restatement explains further that "[a] party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent." An account stated does not of itself operate to discharge any duty. Rather, it is an admission by each party of the facts asserted and a promise by the debtor to pay the sum indicated. Restatement (Second) of Contracts § 282(2) (1981).

The law governing accounts stated has been explained by Washington courts as follows:

> To impart to an account the character of an account stated it must be mutually agreed between the parties that the balance struck thereon is the correct amount due from the one party to

the other on the final adjustment of their mutual dealings to which the account relates. The mere rendition of an account by one party to another does not show an account stated. *There must be some form of assent* to the account, that is, *a definite acknowledgment of an indebtedness in a certain sum*. . . . True, *assent may be implied* from the circumstances and acts of the parties, *but it must appear in some form*.

(Italics ours.) *Shaw v. Lobe*, 58 Wash. 219, 221, 108 P. 450 (1910), *cited in Shell Oil Co. v. Livingston Fertilizer & Chem. Co.*, 9 Wn. App. 596, 598, 513 P.2d 861 (1973). *See also Card v. Western Farmers Ass'n*, 72 Wn.2d 45, 48, 431 P.2d 206 (1967).

In granting summary judgment in Sunnyside Valley's favor on the issue of account stated, the trial court found that Roza had "expressly or impliedly consented" to the bills:

> The parties each year from 1975 through 1983 routinely reviewed Plaintiff's billings, communicated with each other, and Defendant each year either *expressly or impliedly consented* and agreed to them. There was no fraud, mistake or accident claimed by either party. Defendant is precluded by "account stated" from asserting in this litigation defenses or claims relating to Plaintiff's bills from 1975 through 1983.

Clerk's Papers, at 21. Order on Partial Summ. J. and Mot. to Dismiss, at 4.

Roza now maintains that "[a]t the time of the argument on the summary judgment the evidence clearly demonstrated that Roza had persistently objected to the billings presented by Respondents." Response to Pet. for Review, at 9. Roza also represents that its "objections were on-going from 1976 to the time of trial." Response to Pet. for Review, at 9-10.

Had such evidence been presented to the trial court in response to Sunnyside Valley's motion for summary judgment, the court could not properly have determined the issue of account stated at that procedural stage, because there would have been a material question of fact as to whether Roza in fact assented to the bills in the amounts presented.[1]

---

[1]The fact of payment does not, by itself, establish an account stated as a matter of law. However, payment, together with a failure to objectively manifest

Far from demonstrating that Roza persistently objected to the amounts billed, however, the evidence before the trial court was insufficient even to create a material question of fact as to whether payment of the bills was accompanied by objection. At best, the record before the trial court established that Roza had some concerns about the billing between 1975 and 1984, made inquiries about the sums indicated, and subsequently paid the bills.[2] There was no evidence the payments were made under protest, or that Roza contested the bills even as it paid them. Indeed, at the summary judgment stage, Roza did not even allege that it had contested the bills it paid. See Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. Clerk's Papers, at 315-26.

## II
### THE COURT OF APPEALS DECISION

The Court of Appeals reversed the trial court's summary judgment determination of the account stated issue on the ground there was "no indication that the parties mutually agreed to settle their account by payment of a stated sum." The court explained further that "neither Roza not Sunnyside recalculated an amount to be paid." Court of Appeals decision, at 16.

■ The notion that an account stated can only be premised on an express mutual agreement to settle the account by payment of a stated sum misapprehends one of the functions of the doctrine, to permit the court to impute agreement to a party *in the absence* of explicit agreement about that sum. *See* Restatement (Second) of Contracts §

either protest or an intent to negotiate the sum at some future time, does establish an account stated. *See Northwest Motors, Ltd. v. James*, 118 Wn.2d 294, 302-03, 822 P.2d 280 (1992).

[2]For example, Roza presented a letter of Ron Van Gundy, its manager, indicating that differences of opinion had existed between Roza and Sunnyside Valley for many years. The letter is dated March 6, 1985, and states that:

Differences of opinion between the two Districts have existed almost since the signing of this Contract. In the past three years both Districts have attempted to settle the differences of opinion relative to the maintenance of these drains. Unfortunately however, these attempts have been unsuccessful.

Clerk's Papers, at 130.

282(2) (1981) *see also* 6 Arthur L. Corbin, *Contracts* § 1313 (1962).

To establish an account stated it is not essential to show there was an express "settlement" of an account or a "recalculation" of an amount to be paid. An account stated can result from delivery of a bank statement to which a depositor tacitly assents by holding it for a period of time without objection. *See* Restatement (Second) of Contracts § 282(1) (1981).

█ If an account stated can be created by the mere retention of a bank statement without protest, it follows with even greater force that an account stated may be created by the retention and payment of a bill without protest. Because Roza did not allege before the trial court that its payment of the bills between 1980 and 1984 was accompanied by protest, the trial court correctly concluded on summary judgment, under the facts before it, that the doctrine of account stated barred Roza's claims for that period.

The judgment of the Court of Appeals on the issue of account stated is reversed, and the determination of the trial court is reinstated.

ANDERSEN, C.J., and BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.