78 P.3d 1026 (2003)
118 Wash.App. 859
PARROTT MECHANICAL, INC., an Idaho corporation, and Service Experts, Inc., a Delaware corporation, Respondents,
v.
Howard RUDE and Delvona Rude, individually and as husband and wife; Rude Enterprises, L.L.C.; I.G.C. Properties, L.L.C.; I.G.C. Phase Two, L.L.C.; I.G.C. Phase Three, L.L.C.; Great American Insurance Company, Appellants.
No. 21553-9-III.
Court of Appeals of Washington, Division 3, Panel One.
October 30, 2003.
*1027 Erika Balazs, Bryce J. Wilcox, Attorneys at Law, Spokane, WA, for Appellants.
Charles M. Andersen, Courtney Renee Beaudoin, Attorneys at Law, Spokane, WA, for Respondents.
*1028 SWEENEY, J.
The affirmative defense of account stated requires written evidence of a statement of an account balance and some evidence of mutual assent that the amount stated is the final balance to date. The appellants here, Howard and Delvona Rude, were agents and principals of Rude Enterprises, a construction project owner and developer. At the same time, the Rudes were officers and agents of Parrott Mechanical, Inc., a project subcontractor. In their multiple capacities, the Rudes created and submitted, then accepted and certified to a mortgage company, periodic Parrott invoices. But Rude Enterprises never paid Parrott. And the Rudes disputed the invoices for the first time when Parrott's owners demanded payment. Parrott then sued on a theory of account stated. The trial court concluded summarily that the necessary elements of an action for account stated were established. The question before us is whether any genuine issue of material fact precludes this summary disposition. We conclude there is none and affirm the judgment.

FACTS
Parrott Mechanical, Inc. is an Idaho-based construction firm. Howard and Delvona Rude owned it until September 30, 1997, when they sold their interest to Service Experts, Inc. (SEI), a Delaware corporation. Parrott then became a wholly owned SEI subsidiary. But Howard Rude continued to serve as Parrott's president and general manager. And Delvona Rude continued to serve as vice president and assistant general manager.
Howard and Delvona Rude are also sole owners of Rude Enterprises, L.L.C.; I.G.C. Properties, L.L.C.; I.G.C. Phase Two, L.L.C.; and I.G.C. Phase Three, L.L.C. (the Rude Enterprises).
In April 2000, Howard Rude, acting for Parrott, bid to provide all electrical, heating, ventilating, air conditioning, and plumbing systems for two I.G.C. commercial buildings in Spokane County. Delvona Rude, acting for I.G.C., accepted the Parrott bids. Two contracts were signed by Delvona Rude for Parrott, and by Howard Rude for I.G.C. Parrott personnel provided labor, services, equipment, and supplies for the projects, under the direction of the Rudes from May 18, 2000 to no later than November 1, 2000.
The Rudes periodically generated Parrott invoices reflecting labor and materials, plus 8.1 percent Washington sales tax, through October 31, 2000. They submitted these invoices to the Rude Enterprises for payment. The Rudes did not object to the invoices prior to their filings in opposition to Parrott's motion for partial summary judgment.
The Rude Enterprises arranged financing from Intervest Mortgage Investment Co. to pay for the ongoing construction and specifically that performed by Parrott. I.G.C. submitted monthly disbursement requests to Intervest Mortgage. Each request was signed by Howard Rude, and each represented that:
(a) Completion of the improvements to the date of this request has been performed in accordance with the plans and specifications submitted to the lender.
(b) The amount requested for construction items represents dollar for dollar either work already completed on the improvements or materials delivered to the site.
(c) All amounts previously disbursed for construction items have been paid to the parties performing the work or delivering the materials for which the amounts were requested.
Intervest Mortgage disbursed the funds based on the Parrott invoices and Howard Rude's certification.
The Rudes and the Rude Enterprises nonetheless failed to pay Parrott the amounts due on the invoices through October 31, 2000. So Parrott filed a claim of lien in the superior court for $683,685.79 plus interest, costs, and attorney fees. Parrott and the Rudes reached an agreement for partial payment. The Rudes paid Parrott $575,000 and posted a $120,000 bond. Parrott then released the lien. The Rudes committed themselves "jointly and severally" to this lien bond, and signed individually and as associate members of the entities. Clerk's Papers (CP) at 13.
*1029 The parties disputed whether or when after November 1, 2000, Parrott abandoned the project, and the amount, if any, due after that date. But, based on the undisputed Parrott invoices through October 31, 2000, the court found $233,130.02 remained unpaid on Phase I, and $37,013.60 on Phase II. These amounts are supported by a line-by-line breakdown of the invoices. The court found that the Rudes' objections to the invoices were not made within a reasonable time and concluded that the invoices established an account stated. The court granted Parrott's motion for partial summary judgment. The court awarded prejudgment interest of 12 percent because the judgment amount was liquidated as set forth in the invoices. The court ordered the lien bond foreclosed and ordered immediate entry of the judgment. The remaining issues were reserved for trial. The matter of attorney fees was reserved until the final resolution of the case.
The court denied the Rudes' motion for reconsideration, but stayed execution of its judgment pending this appeal.

DISCUSSION
The trial court applied the substantive law of Idaho pursuant to the choice of law clauses in the original contracts. Such agreements are generally given effect under Washington law. McGill v. Hill, 31 Wash.App. 542, 547-48, 644 P.2d 680 (1982). The parties agree that Washington procedural law applies to the summary judgment proceedings and to our review.
We review an order of summary judgment by applying the same standard as the trial court. Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 634, 854 P.2d 23 (1993). Summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); Margola, 121 Wash.2d at 634, 854 P.2d 23.
The moving party bears the initial burden to show the absence of any issue of material fact. Young v. Key Pharms., Inc., 112 Wash.2d 216, 225, 770 P.2d 182 (1989). Uncontroverted, relevant facts offered in support of summary judgment are deemed established. Cent. Wash. Bank v. Mendelson-Zeller, Inc., 113 Wash.2d 346, 354, 779 P.2d 697 (1989). Findings of fact by the trial court are appropriate on summary judgment where reasonable minds could reach but a single conclusion. Alexander v. County of Walla Walla, 84 Wash.App. 687, 692, 929 P.2d 1182 (1997).
ACCOUNT STATED
An account stated requires (a) a writing evidencing that a final balance of an account was rendered and (b) evidence of mutual assent that the amount stated is a final balance to date. M.T. Deaton & Co. v. Leibrock, 114 Idaho 614, 616, 759 P.2d 905 (Ct.App.1988). Washington law and the Restatement (Second) of Contracts § 282(1) (1981) are in accord. See, e.g., Sunnyside Valley Irrigation Dist. v. Roza Irrigation Dist., 124 Wash.2d 312, 315, 877 P.2d 1283 (1994). To establish an account stated, an invoice must set forth the state of the account between the parties and the balance owed. Beaton, 114 Idaho at 616, 759 P.2d 905. More than a "mere memorandum" is required. But an invoice is sufficient if it is plain on its face that it is intended to be a final settlement up to date. Needs v. Hebener, 118 Idaho 438, 442-43, 797 P.2d 146 (Ct.App.1990).
A written account becomes an account stated if the other party to the transaction acquiesces in its correctness. Deaton, 114 Idaho at 616, 759 P.2d 905. Assent may be implied from failure to object within a reasonable amount of time. Id.; Argonaut Ins. Cos. v. Tri-West Constr. Co., 107 Idaho 643, 646, 691 P.2d 1258 (Ct.App.1984). And, once an account stated is established, it becomes a new contract. Needs, 118 Idaho at 443, 797 P.2d 146.
Parrott was then entitled to judgment on a showing (a) that it submitted invoices for services rendered, and (b) that the Rudes did not object to these invoices within a reasonable time.
*1030 The Rudes do not deny that Parrott submitted invoices. Nor do they deny that they assented to the balances stated in the invoices. They contend that the court erroneously assumed that Parrott in fact performed all the work reflected in the invoices. And they deny that their certification of all Parrott invoices in the disbursement requests showed mutual assent. The Rudes insist that the quantity and quality of Parrott's performance between May 1, 2000 and November 1, 2000  the period covered by the invoices  is a disputed material fact that precludes summary judgment. The essence of the Rudes' case is that Parrott did not perform all the work invoiced during this period. And the Rudes had to pay other contractors to complete the work.
Our review of this record reveals quite the contrary.
First, the Rudes presented no evidence that work was performed by any entity other than Parrott before November 1, 2000. The only affidavits the Rudes submitted showed that additional work was done after that date.[1] These affidavits do not, then, contradict the Parrott performance or invoices upon which the court granted judgment.
Moreover, quality of performance is not material to a claim of account stated, unless performance was challenged in a timely manner. Deaton, 114 Idaho at 616, 759 P.2d 905. An objection raised in response to a summary judgment motion is not timely in any event.
Not only did the Rudes fail to object in any manner, timely or otherwise, to the invoices here, they affirmatively certified to Intervest Mortgage that the invoices represented, dollar for dollar, work performed and money owed to Parrott to date. The Rudes nonetheless contend that their disbursement requests to Intervest Mortgage before November 1, 2000 did not certify work they discovered after November 1 was never performed. But this argument flies in the face of their unequivocal prelitigation certifications to the contrary. The Rudes explicitly assented to the invoices.
Parrott thus established the essential elements of an account stated as a matter of law. Reasonable minds could not conclude other than that the invoices are plain on their face; that they were intended to be a final statement of the balance owed up to date; and that the Rudes did not object to a single invoice submitted before November 1, 2000  the only invoices upon which the court ruled. Their certification of the invoices to Intervest Mortgage is additional and unequivocal evidence of their assent. The court correctly ruled that objections raised for the first time in response to the motion for summary judgment were not made within a reasonable time.
Parrott was not required to prove that the invoices were a true statement of the work done. Despite that, it presented voluminous evidence that it did the work. Disputed facts on this question, however, are not material. Parrott had to establish only that it submitted invoices clearly intended as statements of the balance owed to Parrott by the Rudes as of the date of each invoice, and that the Rudes did not object within a reasonable time. Parrott did so.

PERSONAL LIABILITY
The trial court held the Rudes jointly and severably liable. The Rudes mischaracterize this as "piercing the corporate veil." The Rudes contend that Parrott did not argue this theory to the trial court and that the trial judge improperly pierced the corporate veil here.
This contention is unsupported by the record. Parrott sought judgment from the Rudes individually, as well as from their corporate entities, and set forth its grounds for doing so.
The summons and both the original and amended complaints name the Rudes individually as defendants. Parrott alleged that the Rudes acted as individuals and as a marital community as well as in their capacity as officers of the Rude Enterprises. Moreover, *1031 the complaint bases the Rudes' liability on the breach of their obligations to Parrott under the terms of their employment agreements and their fiduciary duties as officers. Parrott alleged that the Rudes and the various corporate defendants acted "either individually or collectively, but all for the benefit of each Defendant." CP at 304. Howard and Delvona Rude as individuals are named repeatedly as individuals throughout several pages of pleadings stating various causes of action. The prayer for relief is for judgment against Howard and Delvona Rude, their marital community, and the Rude Enterprises, jointly and severally.
And it was plain from the evidence and the argument throughout that Parrott asserted a cause of action against the Rudes individually. The Rudes never pleaded the defense of failure to state a cause of action against them. See, e.g., Frontier Milling & Elevator Co. v. Roy White Co-Operative Mercantile Co., 25 Idaho 478, 138 P. 825 (1914). The Rudes do not address their individual liability under contract or for breaching their fiduciary duty as officers of Parrott. And nothing in the record or the order appealed from suggests that the court entertained any notion of piercing a corporate veil.
This is simply a non-issue.
CALCULATION OF THE JUDGMENT AMOUNT
The Rudes dispute several aspects of the judgment amount.
The judgment includes only the amounts reflected in the invoices creating the account stated. Two billings of $20,000 and $50,000 challenged by the Rudes here were not in fact included, either in the complaint or in the judgment. CP at 29 n. 2. The Rudes also claim to have made a $1,840 payment which they contend the court failed to credit. The only evidence before the court on this item was the declaration of Parrott bookkeeper Joyce DeDecker, who said that no $1,840 amount was involved in the I.G.C. project. One $1,840 transaction was recorded in December 1999, but it was for an entirely unrelated project.
Tax and Retainage. The Rudes are correct that the construction contracts provide that the contract price includes sales tax. But the court did not rely on these contracts. Once a writing is established as constituting an account stated, it becomes a new contract. Needs, 118 Idaho at 443, 797 P.2d 146.
Here, the judgment details are derived from the Parrott invoices. Invoices were prepared for Parrott by Howard Rude, submitted to I.G.C. for Parrott by Howard Rude, and certified to Intervest Mortgage for I.G.C. by Howard Rude. These invoices, including sales tax and retainage, establish an account stated. They created a new contract binding on the defendants.
Moreover, the Rudes' belated objections to retainage are based solely on their own postjudgment computations submitted to the trial court with their motion for reconsideration. The Parrott worksheet actually used by the court is not in the record. And the Rudes do not specify where the trial court's error occurred, leaving no basis for us to review the trial judge's calculations.
The Rudes do not assign error to the prejudgment interest at 12 percent.
ATTORNEY FEES
In any civil action to recover on an account stated, the general rule in Idaho is that the prevailing party may recover reasonable attorney fees as set by the court. IDAHO CODE § 12-120(3). No further authority is required. Hoffer v. Callister, 137 Idaho 291, 47 P.3d 1261, 1266 (2002).
Here, the prevailing party has yet to be determined. Consideration of attorney fees is then premature. Since the trial court has reserved the determination of fees, we will do the same.
We affirm the order of partial summary judgment.
WE CONCUR: BROWN, C.J., and KATO, J.
NOTES
[1] See, e.g., CP at 349-50 (Howard Rude); CP at 335 (Larry Polin); CP at 339 (Eric Rude); CP at 328 (David Sharpe).