203 P.3d 1077 (2009)
ASSOCIATED PETROLEUM PRODUCTS, INC., a Washington corporation, Respondent,
v.
NORTHWEST CASCADE, INC., Appellant.
No. 36834-0-II.
Court of Appeals of Washington, Division 2.
March 31, 2009.
*1079 Lucy R. Clifthorne, Attorney at Law, Tacoma, WA, for Appellant.
Ken Fielding, James Victor Handmacher, Morton McGoldrick PS, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Associated Petroleum Products, Inc. (Associated), a diesel fuel provider for Northwest Cascade, Inc. (Northwest), sued Northwest for money due under several invoices. Northwest had deducted the claimed amounts from its payments to Associated to compensate for fees Northwest had paid after Associated added them to its invoices without telling Northwest. Northwest now appeals the trial court's summary judgment in favor of Associated, arguing that (1) Associated had a duty to give "reasonable notice" before unilaterally modifying the contract and (2) Northwest's repeated payments of the disputed charges do not constitute an "account stated" as a matter of law because they were based on an excusable mistake. Northwest also appeals the trial court's award of attorney fees to Associated. Because issues of material fact exist as to whether Associated gave reasonable notice to Northwest of its new charges, we reverse the summary judgment, vacate the attorney fees award, and remand for further proceedings.

FACTS[1]
¶ 2 Associated is a petroleum products wholesaler. Northwest uses diesel-powered equipment at its construction sites. In 2005, Northwest hired Associated to provide "fleet fueling" services wherein Associated employees fueled Northwest's equipment at its job sites in the evenings. The companies agreed that as a service charge, Northwest would pay 20 cents per gallon over the market "rack rate" for the fuel it purchased. The agreement was terminable at will by either party.
¶ 3 Associated began providing the service in August 2005. In December 2005, Associated's sales manager, Chris Bertram, arranged a meeting with Northwest's fleet manager, Jeff Warren, to "discuss housekeeping issues" regarding the fleet fueling arrangement. Clerk's Papers (CP) at 286. According to Warren, Bertram "wanted to talk about ways our construction crews could make their job easier, such as lining up the equipment that needed to be fueled by the roadside." CP at 286. Warren also recalled that Bertram had suggested adding "demurrage" fees to the contract, but Warren had responded, "No, no way." CP at 201. Overall, the meeting "did not stand out in [Warren's] mind" as involving any renegotiation of contract terms. CP at 286.
¶ 4 After the meeting, Associated's lengthy invoices began to include charges referred to as "time on site" charges. Over four months, those charges totaled $13,404.16. Associated added the charges because Northwest was often sending Associated out to refuel equipment that needed very little fuel. Warren did not notice the "time on site" charges, however, and consequently authorized payment on seven bi-monthly invoices that included them.
¶ 5 In March 2006, Associated terminated the fleet fueling arrangement for other reasons. Warren began going through Associated invoices to prepare for negotiating an agreement with a new fuel provider. He discovered the "time on site" charges and called Bertram to ask what they were for. Bertram initially said that he "could not explain" the charges; later, he told Warren that he had told him about the charges in the "housekeeping" meeting several months earlier. CP at 287. Bertram produced an undated document entitled "APP Fleet Fueling Wet-HosingSmall Tank Delivery Policies & Procedures," claiming that he gave it to Warren at the meeting. CP at 281. The *1080 document included a section labeled "Gallonage Requirements" that described an hourly "demurrage fee" for deliveries where fewer than 200 gallons were needed. CP at 281. Warren did not remember discussing any such charges, and he testified in a declaration that he would not have agreed to them even if they had come up because he knew that he did not have authority to do so.
¶ 6 Northwest still had two pending Associated invoices at the time, so in paying them it deducted the amounts already paid for the "time on site" charges. Associated sued Northwest for the balance due under the invoices, $13,871.39, plus interest. Associated then moved for summary judgment, arguing that it was entitled to the invoiced amounts as a matter of law under the doctrine of "account stated" and because the agreement was terminable at will. The trial court granted Associated's motion for summary judgment and awarded it attorney fees pursuant to the parties' contract.

ANALYSIS
¶ 7 Northwest argues that the trial court erred in granting summary judgment to Associated because questions of material fact exist as to whether Associated gave adequate notice of the new charges and whether Northwest agreed to them. A trial court may grant a motion for summary judgment where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c). We review an order on summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005).

A. Terminable At Will Contracts

¶ 8 Associated argues that it was entitled to unilaterally modify the contract because it was terminable at will. Northwest responds that it should not be bound by Associated's unilateral modification because Associated did not provide Northwest with reasonable notice of it.[2]
¶ 9 A party to a terminable at will contract can unilaterally modify the contract because, in doing so, the party is simply terminating the old contract and offering a new one. Cascade Auto Glass, Inc. v. Progressive Casualty Ins. Co., 135 Wash.App. 760, 768-69, 145 P.3d 1253 (2006) (citing Gaglidari v. Denny's Rests., Inc., 117 Wash.2d 426, 433-34, 815 P.2d 1362 (1991)), review denied, 161 Wash.2d 1012, 166 P.3d 1217 (2007). But before terminating such a contract, the party must give reasonable notice to the other party. Cascade Auto Glass, 135 Wash.App. at 766, 145 P.3d 1253 (citing Mayflower Air-Conditioners, Inc. v. W. Coast Heating Supply, Inc., 54 Wash.2d 211, 213, 339 P.2d 89 (1959)). Reasonable notice is notice "`fairly to be expected or required under the particular circumstances.'" Cascade Auto Glass, 135 Wash.App. at 767, 145 P.3d 1253 (quoting Black's Law Dictionary 1091 (8th ed.1999)). Whether notice is reasonable depends on the circumstances of each case and is ordinarily a question of fact for the jury. Cascade Auto Glass, 135 Wash. App. at 766-67, 145 P.3d 1253 (citing Lano v. Osberg Constr. Co., 67 Wash.2d 659, 663, 409 P.2d 466 (1965)).
¶ 10 We hold that a genuine issue of material fact exists as to whether Associated provided reasonable notice of the new charges to Northwest before imposing them. Associated claims that Bertram discussed the new charges with Warren at the December meeting. Warren says that Associated wanted the meeting to discuss "housekeeping" issues. Associated claims that it provided Warren with a sheet explaining the new charges. Warren says that he does not recall seeing the new sheet and further explains that he would not have agreed to the new charges because he had no authority to do so. Associated then began billing for the new charges in its lengthy itemized billings. But Associated did not separately confirm or *1081 highlight the "new" agreement either in its billings or in a separate document. Although Northwest may have been lax in reviewing its billings, we cannot conclude as a matter of law that the new billings alone gave Northwest reasonable notice of a new contract, particularly where the parties had operated under the old agreement for only four or five months, and Warren had specifically rejected any increase in the fees at the December meeting. Under these circumstances, the trier of fact could find that Associated had to provide something more than simply changing its billings to create a new agreement.

B. Account Stated

¶ 11 Associated also argues that the doctrine of "account stated" entitles it to relief as a matter of law. Northwest responds that even if that doctrine applies, genuine issues of material fact remain regarding whether its failure to notice the charges on the invoices was an excusable mistake.[3]
¶ 12 An account stated is "`a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor.'" Sunnyside Valley Irrigation Dist. v. Roza Irrigation Dist., 124 Wash.2d 312, 315, 877 P.2d 1283 (1994) (quoting 2 Restatement (Second) of Contracts § 282(1), at 386 (1981)). There must be some form of assent to the account, although that assent may be implied from the circumstances and acts of the parties. Sunnyside Valley Irrigation, 124 Wash.2d at 316, 877 P.2d 1283 (quoting Shaw v. Lobe, 58 Wash. 219, 221, 108 P. 450 (1910)). An account stated is an admission of the facts asserted and a promise by the debtor to pay the sums indicated.[4]Sunnyside Valley Irrigation, 124 Wash.2d at 315, 877 P.2d 1283.
¶ 13 Associated relies on Sunnyside Valley Irrigation, 124 Wash.2d 312, 877 P.2d 1283. In that case, a debtor paid invoices to the creditor over about eight years. Sunnyside Valley Irrigation, 124 Wash.2d at 317, 877 P.2d 1283. During that period, the debtor "had some concerns about the billing" and "made inquiries about the sums indicated," but it ultimately paid the bills without protest. Sunnyside Valley Irrigation, 124 Wash.2d at 317, 877 P.2d 1283. The trial court granted summary judgment to the creditor, finding that the debtor had each year "expressly or impliedly consented and agreed" to the bills and was thus precluded from contesting the amount of those bills by the doctrine of account stated. Sunnyside Valley Irrigation, 124 Wash.2d at 316, 877 P.2d 1283 (emphasis omitted). Our Supreme Court affirmed, holding that "payment, together with a failure to objectively manifest either protest or an intent to negotiate the sum at some future time, does establish an account stated." Sunnyside Valley Irrigation, 124 Wash.2d at 316-17 n. 1, 877 P.2d 1283.
¶ 14 Associated argues that this case is "indistinguishable" from Sunnyside Valley Irrigation because Northwest paid the invoices without raising any objection to the "time on site" charges. But Sunnyside Valley Irrigation is distinguishable on two counts. First, the debtor's contractual responsibility in that case remained the same: to pay a percentage of total costs. Sunnyside Valley Irrigation, 124 Wash.2d at 314, 877 P.2d 1283. The debtor's dispute was to the reasonableness of the charged services, and the court properly treated this challenge as going to the facts underlying the bills. In contrast, the alleged "account stated" in this *1082 case involves a material modification to the terms of the underlying contract.
¶ 15 Second, in Sunnyside Valley Irrigation, the debtor made no allegation of fraud, mistake, or accident to explain its failure to protest. Here, Northwest claims that its failure to learn of the additional invoice charges was an excusable unilateral mistake. Specifically, it asserts that it mistakenly believed that the invoices it paid would be consistent with the contract it had negotiated with Associated.[5]
¶ 16 The effect of an account stated as a promise is subject to the rules on mistake. 2 Restatement (Second) of Contracts § 282 cmt. c, at 387; cf. Ryan v. Dowell, 86 Wash. 76, 82, 149 P. 343 (1915) (where debtor claims that accounts stated were established by fraud, clearly not estopped from showing the truth). Unilateral mistake entitles a party to reform a contract only if the other party engaged in fraud or inequitable conduct. Gammel v. Diethelm, 59 Wash.2d 504, 507, 368 P.2d 718 (1962) (quoting Kaufmann v. Woodard, 24 Wash.2d 264, 270, 163 P.2d 606 (1945)). But a unilateral failure to know or discover facts does not bar the mistaken party from avoiding or reforming the contract unless his fault amounts to a failure to act in good faith or in accordance with reasonable standards of fair dealing. Wash. Mut. Sav. Bank v. Hedreen, 125 Wash.2d 521, 530, 886 P.2d 1121 (1994) (quoting 1 Restatement (Second) of Contracts § 157, at 416 (1979)). A party has engaged in fraud or inequitable conduct if it conceals a material fact that it has a duty to disclose to the other party. Wash. Mut. Sav. Bank, 125 Wash.2d at 526, 886 P.2d 1121 (citing Kelley v. Von Herberg, 184 Wash. 165, 174, 50 P.2d 23 (1935)).
¶ 17 Northwest has shown that a genuine issue of material fact exists as to whether Associated concealed its unilateral modification of the contract from Northwest. As we discussed above, Associated had a duty to give Northwest reasonable notice of the modification; the fact finder could conclude that Associated decided not to do so because it knew Northwest would reject it. The fact finder could also conclude that Northwest's failure to notice the "time on site" charges met fair dealing standards because Northwest could reasonably assume that Associated would provide clear and specific notice of their proposed new charges. In sum, the trial court erred in granting summary judgment to Associated.[6]
¶ 18 Because we reverse the summary judgment, we need not address Northwest's claim that the trial court erred in striking portions of one of Northwest's affidavits. We also do not address Northwest's argument as to the trial court's calculation of attorney fees it awarded Associated under the contract. Associated is not yet the prevailing party; the issue of attorney fees must abide by the trial outcome. We reverse the summary judgment, vacate the attorney fees award, and remand to the trial court.
We concur: QUINN-BRINTNALL, J., and PENOYAR, A.C.J.
NOTES
[1] Because this case comes to this court after disposition at summary judgment, we review the facts in the light most favorable to Northwest, the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005).
[2] Northwest relies on our decision in Tacoma Fixture Co., Inc. v. Rudd Co., Inc., 142 Wash.App. 547, 554, 174 P.3d 721, review denied, 164 Wash.2d 1006, 190 P.3d 55 (2008), in which we held that "because the parties already had a contract, [one party] could not unilaterally modify the contract based upon [the other's] silence." Tacoma Fixture is not applicable because Northwest did not merely remain "silent" regarding the new charges; it paid them.
[3] The parties do not discuss whether an account stated theory of recovery is available to a party to a terminable at will contract. Accordingly, we do not address the issue.
[4] Regarding an account stated, Associated represents that once established, it "`becomes' the contract. That is, the invoiced price, paid without objection, establishes the parties' contract price." Br. of Resp't at 15-16 (citing Parrott Mech., Inc. v. Rude, 118 Wash.App. 859, 865, 78 P.3d 1026 (2003)). But Associated misquotes and misrepresents the Parrott opinion; what Division Three stated in that case was that "once an account stated is established, it becomes a new contract." Parrott Mech., 118 Wash.App. at 865, 78 P.3d 1026 (emphasis added). This rule is more consistent with Sunnyside Valley Irrigation, and the Restatement, which state that "[a]n account stated does not of itself operate to discharge any duty." Sunnyside Valley Irrigation, 124 Wash.2d at 315, 877 P.2d 1283 (citing 2 Restatement (Second) of Contracts § 282(2), at 386).
[5] Associated characterizes Northwest's asserted "mistake" as its "conscious policy decision to pay invoices without reviewing them." Br. of Resp't at 20. But the term "mistake" refers to the party's beliefs at the time the contract is made, not the party's acts. Denaxas v. Sandstone Court of Bellevue, LLC, 148 Wash.2d 654, 668 & n. 8, 63 P.3d 125 (2003) (citing 1 Restatement (Second) of Contracts § 151, at 383).
[6] Associated argues that a "parallel theory" also supports summary judgment, but the theory it proposes is not supported by Washington law. Br. of Resp't at 37 (citing J.W. Goodliffe & Son v. Odzer, 283 Pa.Super. 148, 423 A.2d 1032 (Pa.Super.Ct.1980)).